**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

LANCE LASHAWAY,

Plaintiff,

v.

CITY OF HILLSDALE,

HILLSDALE CITY COUNCIL,

MAYOR SCOTT SESSIONS, in his official and individual capacity,

COUNCIL MEMBER BOB FLYNN, in his official and individual capacity,

COUNCIL MEMBER GREGORY STUCHELL, in his official and individual capacity,

COUNCIL MEMBER GARY WOLFRAM, in his official and individual capacity,

COUNCIL MEMBER WILLIAM MORRISEY, in his official and individual capacity,

THOMAS THOMPSON, City Attorney, in his official and individual capacity,

HILLSDALE COUNTY,

HILLSDALE COUNTY BOARD OF COMMISSIONERS,

HILLSDALE COUNTY COMMISSIONER MARK E. WILEY, in his official and individual capacity,

HILLSDALE COUNTY COMMISSIONER KEVIN COLLINS, in his official and individual capacity,

HILLSDALE COUNTY COMMISSIONER BRAD BENZING, in his official and individual capacity,

Case No.

Hon.

**PLAINTIFF'S VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, CONSTITUTIONAL VIOLATIONS, VIOLATIONS OF STATE LAW, AND DAMAGES**

**DEMAND FOR JURY TRIAL**

HILLSDALE COUNTY COMMISSIONER
BRENT A. LEININGER, in his official and individual capacity,

HILLSDALE COUNTY SHERIFF SCOTT B. HODSHIRE, in his official and individual capacity,

and

HILLSDALE COUNTY PROSECUTOR JAMIE WISNIEWSKI, in her official capacity for prospective relief to the extent permitted by law and in her individual capacity only for alleged non-advocative conduct,

Defendants.

---

CARSON J. TUCKER (P62209)
LEX FORI, PLLC
COUNSEL FOR PLAINTIFF
1250 W. 14 MILE RD., #3020
TROY, MI 48083
(734) 887-9261
cjtucker@lexfori.org

---

**PLAINTIFF'S VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, CONSTITUTIONAL VIOLATIONS, VIOLATIONS OF STATE LAW, AND DAMAGES**

Now comes Plaintiff, LANCE LASHAWAY, through undersigned, and for his Complaint against the Defendants in the above-captioned case, states as follows:

## INTRODUCTION

> ***"When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."*** – *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24; 142 S. Ct 2111; 213 L. Ed. 2d 387 (2022), citing *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816; 120 S. Ct. 1878; 146 L. Ed. 2d 865 (2000).

> ***"Maintenance of the opportunity for free political discussion is a basic tenet of our constitutional democracy."*** – *Cox v. Louisiana*, 379 U.S. 536, 552; 85 S. Ct. 453 (1965).

> ***"[G]overnmental action may be subject to constitutional challenge even though it has only an indirect effect on the exercise of First Amendment rights."*** – *Laird v. Tatum*, 408 U.S. 1, 12-13; 92 S. Ct. 2318; 33 L. Ed. 2d 154 (1972).

***"[C]onstitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights."*** – *Laird v. Tatum*, 408 U.S. 1, 11; 92 S. Ct. 2318; 33 L. Ed. 2d 154 (1972).

***"Freedom of speech is protected against censorship or punishment [and] there is no room under our Constitution for a more restrictive view. For the alternative would lead to standardization of ideas either by legislatures, courts, or dominant political or community groups."*** – *Cox v. Louisiana*, 379 U.S. 536, 552; 85 S. Ct. 453 (1965).

***Anonymous political expression is not a disfavored form of speech; the decision to withhold one's identity may itself protect the speaker and encourage participation in public debate. "[A]n author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment."*** *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342; 115 S. Ct. 1511 (1995).

***"To entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained or is immediately in danger of sustaining a direct injury as the result of that action."*** – *Ex parte Levitt*, 302 U.S. 633, 634 (1937).

***"The Board's requirement that speakers announce their home addresses at the beginning of their remarks is little better. Policies that fall short of a direct prohibition on First Amendment expression may nevertheless amount to a constitutional violation when they deter or chill speech. The alleged danger of this statute is, in large measure, one of self-censorship. Forcing commenters to disclose their home addresses before speaking on controversial or hot-button issues seems particularly likely to silence a would-be speaker. And the Board seemed aware of this chilling effect: After permitting some commenters to proceed without disclosing their addresses, it appears to have enforced the requirement midway through a controversial comment, precisely because it was likely to deter the speaker."*** – *Moms for Liberty – Wilson Cnty. v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499, 517 (6th Cir. 2025).[1]

1. Plaintiff, Lance Lashaway, has been subjected to multiple prohibitions on his attempts to provide public comment and criticism and air his grievances at public meetings held by Defendants since at least May of 2026 and continuing through September 2026. For simply refusing to comply with the

[1] (Thapar, J., concurring) (denying preliminary injunction because conditional requirement had been cured but remanding to the District Court to address the Plaintiffs' core constitutional claims, see *Moms for Liberty v. Wilson Cnty. Bd. of Educ., et al.*, United States District Court, M.D. Tenn. Case No. 23-cv-00211 (cross motions for summary judgment currently pending as of September 20, 2026).

unconstitutional requirement that he identify himself and provide his address as a condition of exercising his First Amendment rights, he has been muted, prevented from making any public comments, and forcibly removed from these public meetings for not doing so.

2. Defendants' intentional, conspired method of suppression of Plaintiff's speech to chill the expression of his ideas and to deter him and others from exercising their First Amendment rights and to essentially self-censor themselves has no place in our Constitutional Republic.

3. These violations continue to this day, and thus, as explained in this Complaint, and in Plaintiff's Motion for a Temporary Restraining Order, Motion for Preliminary Injunction, and Motion for Expedited Discovery, being filed herewith, Plaintiff is entitled to current relief and damages.

4. Plaintiff attended, *inter alia*, the May 4, 2026, May 12, 2026, June 1, 2026, June 15, 2026, June 23, 2026, July 14, 2026, July 20, 2026, July 28, 2026, August 25, 2026, September 8, 2026, and September 21, 2026, public meetings (Defendant Hillsdale City Council Meetings on May 4, 2026, June 1, 2026, June 15, 2026, July 20, 2026, September 8, 2026, and September 21, 2026 and Defendant Hillsdale County Board of Commissioners Meetings on May 12, 2026, June 23, 2026, July 14, 2026, July 28, 2026, August 25, 2026, and September 8, 2026), and, as alleged below, attempted to address these public bodies during their official public comment sessions.

5. Plaintiff was prevented from addressing the government at these meetings because he refused to provide his "name and address" as a condition of being allowed to make public comments.

6. As described below, Plaintiff was forcibly removed from most of these meetings, although as confirmed by video and corroborating evidence, Plaintiff never engaged in a breach of the peace, or other acts that would qualify as such under state and/or federal law. See MCL 15.263(6) ("A person must not be excluded from a meeting otherwise open to the public except for a breach of the peace actually committed at the meeting."); *Cox v Louisiana*, 379 U.S. 536, 552; 85 S. Ct. 453; 13 L. Ed. 2d 471 (1965).

7. Plaintiff brings this lawsuit seeking to vindicate his First Amendment and other constitutional and statutory rights.

8. Plaintiff is simultaneously filing an Emergency Motion and Brief in Support of a Temporary Restraining Order and a Motion and Brief in Support of Preliminary Injunction.

9. Because the Defendants have withheld, secreted, and or destroyed evidence, Plaintiff is also seeking expedited discovery through the filing of a Motion to Expedite Discovery pursuant to Rule 26 of the Federal Rules of Civil Procedure, precisely because while unconstitutionally blocking him from speaking at public meetings since as early as May 2026 and unlawfully having him forcibly removed from these public meetings, thereby continuously violating his constitutional rights, Defendants have also taken several actions to deny or deprive Plaintiff of public records that he has requested through the proper submission of requests under Michigan's Freedom of Information Act (FOIA), MCL § 15.231, *et seq*.

10. By way of their conspiratorial actions and conduct, Defendants have therefore prevented Plaintiff from accessing additional evidence of these ongoing constitutional violations – expedited discovery and immediate injunctive relief are the only remedies available considering that Plaintiff's constitutional rights continue to be violated; he continues to be barred from speaking at public meetings; his freedom of speech and freedom of movement continue to be suppressed and restricted, respectively; and the Defendants continue to attempt to intimidate and harass Plaintiff to dissuade and deter him and others to exercise fundamental constitutional rights, all the while hiding the evidence of their conspiracy to do just that.

## PARTIES

11. Plaintiff, Lance Lashaway, is a United States citizen and resident of Camden, Hillsdale County, Michigan.

**Defendants City of Hillsdale / Hillsdale City Council**

12. Defendant City of Hillsdale (the "City") is a Michigan municipal corporation located in Hillsdale County, Michigan, and is a body corporate under the Home Rule City Act, MCL 117.1, et seq.

13. Defendant Hillsdale City Council (the "Council") is the City's governing body and a public body within the meaning of the Michigan Open Meetings Act (OMA), MCL 15.261, *et seq*., where MCL 15.262(a) defines "public body" broadly enough to reach a city council directly, and the OMA's declaratory and injunctive remedies available in MCL 15.271 apply to a public body whose meeting or decision is at issue.

14. The Council is named as a Defendant principally because it is the public body whose meetings, votes, and decisions are challenged under the OMA. On Plaintiff's claims under 42 U.S.C. § 1983, the Council is named only as the body through which the City acts; those claims against the Council and the City constitute a single claim of municipal liability, and Plaintiff seeks no duplicative recovery.

**Defendants City of Hillsdale Mayor and City Council Members**

15. Defendant Mayor Scott Sessions ("Sessions") was at all relevant times Mayor of the City of Hillsdale, is the City Council's presiding officer, and a final municipal decisionmaker with respect to recognition of speakers and enforcement of the City's public meeting rules.

16. Sessions is being sued in his official capacity for declaratory and prospective injunctive relief, and in his individual capacity for damages to the extent allowed by federal and state law.

17. Defendant Bob Flynn was, at all relevant times, a member of the Council, acted under color of state law, and is sued in his official capacity for declaratory and prospective injunctive relief, and in his individual capacity for damages and injury caused to Plaintiff, to the extent allowed by federal and state law.

18. Defendant Gregory Stuchell was, at all relevant times, a member of the Council, acted under color of state law, and is sued in his official capacity for declaratory and prospective injunctive

relief, and in his individual capacity for damages and injury caused to Plaintiff, to the extent allowed by federal and state law.

19. Defendant Gary Wolfram was, at all relevant times, a member of the Council, acted under color of state law, and is sued in his official capacity for declaratory and prospective injunctive relief, and in his individual capacity for damages and injury caused to Plaintiff, to the extent allowed by federal and state law.

20. Defendant William Morrisey was, at all relevant times, a member of the Council, acted under color of state law, and is sued in his official capacity for declaratory and prospective injunctive relief, and in his individual capacity for damages and injury caused to Plaintiff, to the extent allowed by federal and state law.

21. Council Members Matthew Bentley, Joshua Paladino, and Jacob Bruns are not named as individual Defendants because they have voted to override Sessions' and the Council's rulings prohibiting Plaintiff from speaking at the City's public meetings.

**Defendant Hillsdale City Attorney**

22. Defendant Thomas Thompson ("Thompson") served as City Attorney and also on information and belief as County Attorney during the May 4, 2026 and June 1, 2026 meetings, *inter alia*, and personally participated in announcing and supporting the City's and County's "legal position" that Plaintiff could not speak at the public meetings unless he identified himself and/or his address, notwithstanding the Council's written rule's use of optional, as opposed to mandatory language.

23. Thompson is sued in his official capacity for declaratory and prospective relief, and in his individual capacity for damages and injury caused to Plaintiff, to the extent he engaged in actionable personal participation outside any protected advocative function.

**<u>Defendant Hillsdale County and Hillsdale County Board of Commissioners</u>**

24. Defendant Hillsdale County is a body corporate under MCL 46.1.

25. Defendant Hillsdale County Board of Commissioners is Hillsdale County's governing body and a public body within the meaning of the Michigan Open Meetings Act, MCL 15.261, *et seq*.

26. The Board is named as a Defendant principally because it is the public body whose meetings, votes, and decisions are challenged under the Michigan Open Meetings Act. On Plaintiff's claims under 42 U.S.C. § 1983, the Board is named only as the body through which Hillsdale County acts; those claims against the Board and the County constitute a single claim of municipal liability, and Plaintiff seeks no duplicative recovery.

27. Defendant Mark E. Wiley was, at all relevant times, a member of the Hillsdale County Board of Commissioners, acted under color of state law, and is sued in his official capacity for declaratory and prospective injunctive relief, and in his individual capacity for damages and injury caused to Plaintiff, to the extent allowed by federal and state law.

28. Defendant Kevin Collins was, at all relevant times, a member of the Hillsdale County Board of Commissioners, acted under color of state law, and is sued in his official capacity for declaratory and prospective injunctive relief, and in his individual capacity for damages and injury caused to Plaintiff, to the extent allowed by federal and state law.

29. Defendant Brad Benzing was, at all relevant times, a member of the Hillsdale County Board of Commissioners, acted under color of state law, and is sued in his official capacity for declaratory and prospective injunctive relief, and in his individual capacity for damages and injury caused to Plaintiff, to the extent allowed by federal and state law.

30. Defendant Brent A. Leininger was, at all relevant times, a member of the Hillsdale County Board of Commissioners, acted under color of state law, and is sued in his official capacity for declaratory and prospective injunctive relief, and in his individual capacity for damages and injury caused to Plaintiff, to the extent allowed by federal and state law.

31. Doug Ingles was also a Hillsdale County Commissioner during the relevant period but is not named as a Defendant. He is referred to as a non-party only where necessary to describe the Board's composition, proceedings, or votes.

**Defendants Hillsdale County Sheriff's Office / Hillsdale County Sheriff**

32. Defendant Scott B. Hodshire was at all relevant times the elected Hillsdale County Sheriff and acted under color of state law.

33. Hodshire is sued in his individual capacity for his own alleged conduct and in his official capacity only for prospective relief supported by an ongoing violation.

**Defendant Hillsdale County Prosecutor Jamie Wisniewski**

34. Defendant Jamie Wisniewski was at all relevant times the elected Hillsdale County Prosecutor and acted under color of state law.

35. Wisniewski is sued in her individual capacity only to the extent evidence supports personal participation in investigative, administrative, advisory, records-related, or conspiratorial conduct outside the protected advocative function, and in her official capacity only for prospective relief to the extent permitted by law.

36. Plaintiff does not seek damages from Wisniewski based merely on a charging decision, the presentation of the State's case, or conduct intimately associated with the judicial phase of a criminal proceeding. The claims asserted herein concern non-advocative participation such as advice or direction to police before prosecution, conspiracy and agreement to use threatened enforcement to deter Plaintiff's protected speech, including the threat to arrest and charge Plaintiff with trespassing at the suggestion of

the City Council and/or County Board of Commissioners, or obstruction, withholding, secreting, and/or destruction of responsive, non-privileged evidence, and further participation in the conspiracy to engage in these and similar acts against Plaintiff as more fully developed herein. See, e.g., *Burns v. Reed*, 500 U.S. 478, 492-96 (1991) (a prosecutor's immunity from suit does not extend to "the prosecutorial function of giving legal advice to the police"); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-76 (1993) ("[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings *are not entitled to absolute immunity*") (emphasis added).

37. Other public officials and employees participated in the acts alleged below, including an officer identified in Plaintiff's contemporaneous writings by the surname Luedecker, and other persons who communicated with the Hillsdale County Prosecutor's Office. Their complete identities, roles, and relationship to the named Defendants are not presently known.

38. Plaintiff will seek leave to identify and name any additional responsible persons if discovery establishes their personal participation in the constitutional deprivations or conspiracy alleged herein.

## JURISDICTION AND VENUE

39. Plaintiff reincorporates and alleges the preceding paragraphs (1-38) as though fully set forth herein.

40. This action arises under, *inter alia*, the First, Fourth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

41. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 with respect to Plaintiff's federal civil-rights claims. See also, 28 U.S.C. § 1343(a)(1), (3), and (4).

42. Plaintiff also seeks attorney fees and litigation expenses under 42 U.S.C. § 1988(b).

43. The Court may also award declaratory and further relief under 28 U.S.C. §§ 2201 and 2202.

44. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's claims arising under Michigan law – including Plaintiff's claim under the Michigan Open Meetings Act, MCL 15.261 *et seq*., and Plaintiff's Michigan common-law claims, *inter alia*, intentional infliction of emotional distress and civil conspiracy – because those claims and Plaintiff's federal claims arise from the same meetings, enforcement decisions, removals, threatened or initiated process, alleged retaliatory course of conduct, conspiracies, and related acts and omissions, and therefore form part of the same case or controversy under Article III of the United States Constitution. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

45. This grant of supplemental jurisdiction extends as well to Defendants Hillsdale City Council and Hillsdale County Board of Commissioners, named as Defendants on Plaintiff's Open Meetings Act claim, because that claim arises from the identical meetings and course of conduct underlying Plaintiff's federal claims against the individually named Defendants. 28 U.S.C. § 1367(a).

46. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside or perform their official duties in this District and all or a substantial part of the events and omissions giving rise to the claims occurred in Hillsdale County, Michigan, and therefore, within the Southern Division of the Western District of Michigan.

## NATURE OF THE ACTION

47. Plaintiff reincorporates and alleges the preceding paragraphs (1-46) as though fully set forth herein.

48. This lawsuit concerns Defendants' past and ongoing constitutional violations and retaliation against Plaintiff for exercising his constitutional and civil rights as a citizen to criticize government, petition for redress, seek public records, run for public office, associate politically, air grievances, and address public bodies at open public meetings.

49. Defendants, acting individually and in concert, used compelled identification (requiring Plaintiff to identify himself by stating his full name and address) before being allowed to speak at a public meeting; enforced an unconstitutional meeting "rule" conditioning his right to speak upon this identification requirement; repeatedly denied Plaintiff the right to public comment; caused law enforcement to forcibly remove Plaintiff from public meetings where there was no breach of the peace or disorderly conduct by Plaintiff; threatened criminal prosecution for trespass as a measure to ensure future efforts by Plaintiff to attend public meetings would be prevented altogether by classifying such attendance as criminal trespass, thereby giving Defendants the right to have law enforcement prevent Plaintiff's attendance; and to have Plaintiff arrested and physically removed from the premises; refused to disclose requests for public records (evidence) demonstrating the Defendants' concerted efforts to quell his protected speech and deter further efforts by him to exercise his rights.

50. These actions on the part of Defendants have continued from at least as early as May 2026, to this date – including the September 8, 2026 meetings held by both the Defendant City Council and Defendant Board of Commissioners and the September 21, 2026 meeting of the Defendant City Council, where Plaintiff was once again blocked from speaking after refusing to identify himself and state his address; forcibly removed from the public meeting by law enforcement; and in the case of the latter Defendants County Board of Commissioners, threatened with criminal trespass charges.

51. Plaintiff sought to use the public-comment forum for its central civic purpose: to speak freely, criticize public officials, air grievances, and petition the government for redress.

52. Defendants conditioned access to the public-comment podium on Plaintiff disclosing his name and address.

53. A person's decision to speak anonymously on public affairs is protected by the First Amendment, and compelled disclosure of private, non-essential information about that person's name, address, and location, chills criticism and quells free speech by exposing a speaker to threats, tracking,

retaliation, harassment, and/or official reprisal. See *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42 (1995); *Moms for Liberty – Wilson Cnty. v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499, 517 (6th Cir. 2025) (Thapar, J., concurring) (forcing commenters to disclose their home addresses before speaking on controversial or hot-button issues is "particularly likely to silence a would-be speaker"). Plaintiff alleges that this dynamic caused him, and would cause similarly situated speakers, to self-censor rather than risk that exposure.

54. The demanded identification did not regulate Plaintiff's speaking time, topic, volume, order of recognition, or physical conduct, and had no reasonable connection to preventing an actual disturbance or breach of the peace.

55. Defendants already knew Plaintiff's identity, and likely know his address. Compelling him to announce these as the price for his ability to speak therefore served no need particular to maintaining order or preventing a breach of peace.

56. Plaintiff alleges that the demand instead was used to isolate, expose, and harass him, to quell his constitutionally protected free speech, and to deter him from airing grievances and petitioning the government. The predictable and intended effect was to cause Plaintiff to self-censor rather than expose himself and his family to that harassment.

57. The Council's pre-June 1 written "rule" merely "requested" a speaker's name and address. It did not make disclosure mandatory and did not classify refusal as disorderly conduct, being out of order, or a breach of the peace, and such mere refusal can never be so classified (**EXHIBIT 1**, Rules as of June 1, 2026).

58. On May 4, 2026, Defendants nevertheless prevented Plaintiff from giving general public comment because he declined to identify himself.

59. The resulting dispute was referred to the Operations and Governance Committee, which recommended replacing "requested" with "required," thereby confirming that the mandatory language did not yet exist.

60. On June 1, 2026, public comment occurred before the proposed amendment appeared under New Business. (**EXHIBIT 2**, June 1, 2026 Council Meeting Minutes).

61. Sessions nonetheless enforced his personal interpretation as though the proposed amendment had already been adopted, acknowledged in substance that his interpretation conflicted with the written rule, denied Plaintiff recognition, declared him out of order, and directed that he be forcibly removed from the public meeting.

62. A Council majority voted 6-3 against overriding Sessions to allow Plaintiff to speak, even though the Council had not adopted the mandatory requirement.

63. The vote supplies evidence of notice, motive, municipal ratification, and the chronology of the alleged plan.

64. Plaintiff does not seek individual damages from a legislator based on a protected legislative vote or political motive alone; individual liability rests on each person's own actionable nonlegislative conduct, including enforcement, direction or ratification of removal, the coordination and involvement of the police to respond, threats, or records-related conduct.

65. Plaintiff committed no violence, threat, property damage, physical interference, or breach of the peace. His asserted offense was refusing compelled identification under a rule that did not yet require it and which is unconstitutional on its face in any event.

66. Only after Plaintiff was removed did the Council amend Section 6.3 to require a speaker's name and specified residence information.

67. The official June 1 minutes corroborate that Sessions read rules "requesting name and address," that Plaintiff was removed after refusing to state his name, and that the Council later adopted mandatory language (**EXHIBIT 2**).

68. The sequence and the statements made during the meeting support a plausible inference that the identification requirement was used to expose and deter critics, quell protected speech, and prevent Plaintiff from airing grievances rather than to preserve public order.

69. As alleged below, these events were not isolated.

70. Plaintiff alleges and demonstrates herein that the Defendants' conduct formed a connected and cumulative series of escalating retaliatory acts extending over a period of years, beginning after his public criticism, complaints, records activity, and candidacy for public office, and culminating in the repeated 2026 enforcement actions alleged herein, among other conspiratorial acts and involvement in silencing Plaintiff.

71. Compelled identification was not the historical practice of either public body. As alleged below, as recently as December 2025 through February 2026, both the City Council and the County Board permitted members of the public, including Plaintiff, to deliver public comment without stating their names; presiding officers greeted familiar speakers by name and, at most, asked—rather than demanded—a speaker's name. The mandatory, enforced identification condition challenged here emerged only in the spring of 2026, after Plaintiff reported Sessions to police, publicly raised that complaint at a Council meeting, and joined other residents in using County Board public comment to press the Board on the security of local elections.

72. The common purpose and practical effect of Defendants' conduct was to suppress, deter, punish, or burden Plaintiff's continued political participation, free speech, airing of grievances, and petitioning the government as a citizen.

73. The recurring objective, overlapping participants, acknowledged animosity, knowledge of Plaintiff's candidacy and criticism, coordinated official action, cross-entity communications, repeated use of police authority, threatened prosecution, and continuing records disclosure resistance support an inference of a shared retaliatory plan rather than isolated or coincidental decisions.

74. The alleged acts were undertaken through public meetings, official offices, government records systems, police authority, and asserted prosecutorial authority, and were made possible or materially enhanced by governmental power, as will be further confirmed in discovery.

75. On or about June 23, 2026, Plaintiff attempted to speak anonymously at a Hillsdale County Board of Commissioners meeting, was denied public comment, and was removed by Hillsdale City Police.

76. Plaintiff memorialized that an officer Zimmerman reported consulting the County Prosecutor and told Plaintiff that continued refusal could result in a disturbing-the-peace charge.

77. Plaintiff further alleges that a separate recording captures the Hillsdale Chief of Police confirming in substance that if Plaintiff repeated the conduct, he would be arrested and jailed. The recording, rather than recollection alone, is alleged as the source of that further confirmation and is designated as **EXHIBIT 3**, subject to authentication and/or a verified transcription of the relevant statements.

78. During a later recorded encounter, an official who identified himself as the Hillsdale County Sheriff told Plaintiff in substance that he had to provide his name to speak, that otherwise he would not speak, and that he would be forcibly removed again if he continued refusing. The recording, designated as **EXHIBIT 4**, corroborates notice, anticipated repetition, and the treatment of compelled identification as the operative condition for being allowed to speak at open public meetings.

79. On or about July 14, 2026, at a Hillsdale County Board of Commissioners meeting, Plaintiff refused to state his name and address and was removed from the meeting. The video recording, at https://www.youtube.com/watch?v=K8ilsZ80Z8E&t=1058s, is designated as **EXHIBIT 5**, and

corroborates notice, anticipated repetition, and the treatment of compelled identification as the operative condition for being allowed to speak at open public meetings. At approximately 32 minutes into the meeting two law enforcement officers arrive at the meeting and escort Plaintiff out. *Id*.

80. On or about July 20, 2026, Defendants again denied Plaintiff public comment under the amended identification rule, after a motion to suspend the rule's name-and-address requirement so that Plaintiff could speak failed 4-5 (**EXHIBIT 6**, Council Meeting Minutes, July 20, 2026). Plaintiff was prevented from speaking. The video recording, at https://www.youtube.com/watch?v=K6LMOuBQJr4, is designated as **EXHIBIT 7**, and corroborates notice, anticipated repetition, and the treatment of compelled identification as the operative condition for being allowed to speak at open public meetings. At approximately 59 minutes into the meeting Plaintiff was prevented from speaking. *Id*.

81. Plaintiff was permitted to remain, stayed peaceful, and the meeting continued.

82. On September 8, 2026, Plaintiff was prevented from speaking at public meetings and removed from the meetings, for the same reason – he refused to identify himself and/or disclose his address as a condition of publicly speaking (**EXHIBIT 8**, Unofficial Transcription of County Board of Commissioners Meeting also seen at https://www.youtube.com/watch?v=XWM3swTqa20, September 8, 2026).

83. At the September 8, 2026 Hillsdale County public meeting, a Commissioner asserted that Plaintiff had breached the peace by continuing to seek recognition without stating his name, and moved that the Board direct counsel to prepare an order of trespass barring Plaintiff from all future Board proceedings based on that assertion and his prior removals. *Id*.

84. A remarkable escalation occurred during the latter meeting as evidenced by the transcript taken from the publicly available video; during that meeting the county commissioners indicated that they were seeking to "trespass" (charge Plaintiff with trespassing) specifically so that they could prospectively exclude him from future meetings, before he even comes to them to speak. A transcribed video recording,

rather than recollection alone, at https://www.youtube.com/watch?v=XWM3swTqa20, is alleged as the source of that further confirmation and is designated as **EXHIBIT 8**, subject to authentication and/or a verified transcription of the relevant statements.

85. The allegations in this complaint represent ongoing, continuing, and future imminent constitutionally violative conduct warranting this Court's intervention, declaratory and injunctive relief, including entry of an emergency temporary restraining order and preliminary injunction (as pleaded separately in Plaintiff's Emergency Motion for a Temporary Restraining Order and Plaintiff's Motion for a Preliminary Injunction being concurrently filed with this Complaint).

86. As a result of these alleged facts, Plaintiff seeks, *inter alia*, declaratory and injunctive relief, including, *inter alia*, an emergency restraining order, a preliminary injunction, invalidation of Defendants' implementation of unconstitutional rules and procedures; compensatory, punitive, and statutory damages, including costs and attorney fees, as authorized by state and federal law.

## FACTUAL ALLEGATIONS

### Earlier Protected Activity and Alleged Retaliatory Pattern

87. Plaintiff reincorporates and alleges the preceding paragraphs (1-86) as though fully set forth herein.

88. Plaintiff alleges that the 2026 events described herein and which serve as the basis for his civil rights claims and the violation of his constitutional rights under state and federal law are the culmination of a continuing course of retaliatory treatment extending over a period of years after Plaintiff began to criticize local officials, complained of official misconduct, sought public records, and petitioned governmental bodies for redress.

89. Plaintiff's public complaints and comments are well-known, and the platforms he uses to disseminate them are readily accessible to the general public.

90. Before the 2026 events described herein, Plaintiff also ran for public office. His candidacy, campaign advocacy, criticism of incumbent officials, and communications with voters constituted core political speech, association, and petitioning activity protected by the First Amendment.

91. Plaintiff alleges that Defendants and other involved officials knew of his candidacy and political positions and understood him to be an active political opponent or critic before the coordinated restrictions, removals, threats, and resistance to allow him to speak at public meetings and Defendants' repeated failure to provide records upon request, as alleged herein.

92. Before May 4, 2026, Plaintiff had submitted at least one complaint concerning Defendant Sessions to the Hillsdale City Police Department.

93. The Department accepted the complaint and assigned a case number. No response or other information has been provided concerning this complaint.

94. That prior complaint, Plaintiff's candidacy, and his public criticism of officials, including Sessions, gave Sessions and other involved officials actual notice of Plaintiff's protected activity and of his status as a persistent government critic before Plaintiff was prevented from speaking at public meetings as alleged herein.

95. Plaintiff further alleges that additional incidents, statements, official contacts, and adverse actions predating May 2026 form part of the same retaliatory pattern.

96. The relevance of the earlier course is not merely temporal. Plaintiff alleges continuity of objective: identifying, monitoring, discrediting, deterring, or removing him when he criticized local officials or challenged the legality of restrictions on his speech.

97. The alleged course escalated from opposition to Plaintiff's criticism and prior complaints to denial of speaking opportunities, adoption and selective enforcement of an identification requirement, physical removal by police under threat of force and arrest, threats of prosecution and jail for trespassing or other alleged infractions, and resistance to production of requested public information, principally recordings and communications by and between Defendants and others.

98. Because the communications and decisions connecting the earlier incidents to the 2026 events are principally within governmental possession, Plaintiff pleads the existence and scope of the continuing plan on information and belief and will amend with the specific facts disclosed through records production and discovery. Plaintiff is further seeking expedited discovery through the filing of a simultaneous Motion for Expedited Discovery Under Rule 26.

**Plaintiff's Complaint Against Sessions and His Election-Security Advocacy**

99. The complaint concerning Sessions that Plaintiff submitted to the Hillsdale City Police Department, described above, reported that Sessions and Sessions' campaign manager had stalked Plaintiff.

100. On information and belief, Sessions' campaign manager is active in local party politics alongside, and is personally and politically associated with, several of the County officials whose conduct is at issue in this Complaint or whose offices are the subject of Plaintiff's public criticism, including the Hillsdale County Sheriff and the Hillsdale County Clerk. Plaintiff pleads this association only as a potential channel of communication and shared motive between City and County actors, to be developed in discovery.

101. During the same period, Plaintiff and other residents used public comment and other opportunities to address the County Board to urge the Board to take steps to secure local elections and to criticize the County's response to residents' concerns about the administration of those elections. That advocacy is core political speech on a matter of public concern. Plaintiff does not ask this Court to

adjudicate the merits of any election-related concern; the relevance of the advocacy is that it is the content and viewpoint of the speech that preceded, and that Plaintiff alleges prompted, the restrictions challenged here.

102. On January 27, 2026, Plaintiff was placed on the County Board's agenda and, beginning at approximately the 47-minute mark of the official recording, presented documents to the Board requesting that the Commissioners act to secure local elections. The Board greeted Plaintiff by stating his name. The video recording, at https://www.youtube.com/watch?v=xRYmBGRVXTo, is designated as **EXHIBIT 34**, subject to authentication and/or a verified transcription of the relevant statements.

103. After that meeting, the County Board changed a long-standing rule or practice under which members of the public could be placed on the Board's agenda to make a presentation of the kind Plaintiff had just made. The documents and correspondence reflecting that change are designated as **EXHIBIT 35**.

104. On information and belief, the County Board changed that rule in response to Plaintiff's presentation and the public controversy surrounding the subject of that presentation. The change is an early instance of the pattern alleged throughout this Complaint: when citizen participation became controversial or critical of officials, Defendants altered long-standing participation rules rather than tolerate the criticism.

**Before Spring 2026, Neither Public Body Compelled Speakers to Identify Themselves**

105. Official meeting recordings from December 2025 through February 2026 show that neither the City Council nor the County Board treated disclosure of a speaker's name as a mandatory condition of public comment. Even where a presiding officer announced that speakers should state their names, as at the County Board's January 13, 2026 meeting, the announcement was not enforced. Presiding officers greeted familiar speakers by name or simply invited them to proceed and, at most, asked—rather than demanded—that a speaker state his or her name. Speakers, including Plaintiff, who did not state their names were permitted to speak without interruption, denial, or removal.

106. On December 1, 2025, at a regular meeting of the Hillsdale City Council, Plaintiff delivered public comment beginning at approximately 2:42:50 of the official recording without stating his name, and was neither stopped, denied recognition, nor removed. The video recording, at https://www.youtube.com/watch?v=hvjMzPhNxCI, is designated as **EXHIBIT 32**, subject to authentication and/or a verified transcription of the relevant statements.

107. On January 13, 2026, at a regular meeting of the Hillsdale County Board of Commissioners, at approximately 1:50, the presiding officer announced that speakers were to state their names; as alleged below, that announcement was not applied to the speakers who followed. The video recording, at https://www.youtube.com/watch?v=9NH2aArB7gw, is designated as **EXHIBIT 33**, subject to authentication and/or a verified transcription of the relevant statements.

108. Starting at approximately 3:00 into the video recording, a speaker identified as Joe Hendee delivered public comment without stating his name. *Id*. Plaintiff spoke directly afterward; he was greeted by Defendant Wiley, as Chair, and delivered his comment without stating his name. *Id*. Both comments followed remarks by another resident, Stephanie Scott, concerning the County's handling of residents' election-related concerns.

109. On February 10, 2026, at a regular meeting of the County Board, public comment opened at approximately 2:10 of the official recording with Stephanie Scott speaking without stating her name, raising concerns that public comment was not being recorded and addressing election-related concerns. At approximately 1:49:24 of the same recording, the speaker known as "Bob" was greeted and delivered comments without stating his name. The video is at https://www.youtube.com/watch?v=RC_4nmbFggQ and designated as **EXHIBIT 36**, subject to authentication and/or a verified transcription of the relevant statements.

110. On February 16, 2026, at a regular meeting of the City Council, the first public-comment speaker, beginning at approximately the two-minute mark of the official recording, did not state her name

and was permitted to speak. Plaintiff, who spoke immediately after her, was then called upon to state his name. Caught off guard by a demand that had not been made of the preceding speaker, Plaintiff complied. Plaintiff's comment concerned his report to the City's new Chief of Police regarding his stalking complaint against Sessions, the presiding officer; Sessions reacted to that comment with apparent amusement. The video recording, at https://www.youtube.com/watch?v=3ltrLpNzeGE, is designated as **EXHIBIT 37**, subject to authentication and/or a verified transcription of the relevant statements.

111. The February 16, 2026 meeting is the first occasion on which Plaintiff was required to state his name before speaking. The demand was made of Plaintiff, but not of the speaker immediately preceding him, at the moment Plaintiff rose to address his complaint against the official presiding over the meeting.

112. On February 24, 2026, at a regular meeting of the County Board, beginning at approximately the 58-minute mark of the official recording, the Board's public-comment rules were not read before public comment began; the first speaker was greeted and permitted to speak; Plaintiff spoke second without stating his name and was not stopped; and a third speaker, upon being asked, voluntarily gave his name. Plaintiff used his comment to notify the Board of what he contended was a violation of law that had occurred that day. The video is at https://www.youtube.com/watch?v=ZrDBPD_8Gzs and designated as **EXHIBIT 38**, subject to authentication and/or a verified transcription of the relevant statements.

113. The Board's next regular meeting, on March 10, 2026, was halted because of overcrowding by members of the public, reflecting the level of public interest in the matters Plaintiff and other residents had been raising. The video recording, at https://www.youtube.com/watch?v=4kAhv1rPu_Y, is designated as **EXHIBIT 39**, subject to authentication and/or a verified transcription of the relevant statements.

114. These recordings establish, as a matter of the public bodies' own records, that (a) the established custom of both the City Council and the County Board was to greet speakers or, at most, to request a name, not to compel one, even when a name requirement had been announced; (b) Plaintiff himself addressed both bodies without stating his name, without incident; (c) other residents did likewise; and (d) mandatory, enforced identification first appeared only after Plaintiff had reported Sessions to police, raised that complaint publicly at a Council meeting, and joined other residents in pressing the County Board on election security, and after the Board had experienced the overflow attendance of March 10, 2026.

115. Within weeks thereafter, both the City and the County—each advised by Defendant Thompson, who served as both City Attorney and County Attorney—began enforcing a compelled-identification condition against Plaintiff, first on May 4, 2026 at the City Council and then on May 12, 2026 at the County Board. The near-simultaneous shift by two distinct public bodies, away from their own prior practice and toward the same condition, directed first and most forcefully at the same speaker, supports a plausible inference that the change was coordinated and targeted at Plaintiff and his viewpoint rather than adopted as a neutral, generally applicable procedural reform.

**The Adopted Rule Before June 1, 2026**

116. Before the June 1 meeting, the City Council Rules of Procedure governed public comment and the presiding officer's authority.

117. Section 6.3 stated in pertinent part that a person addressing the Council was "requested" to state his or her name and address (**EXHIBIT 1**, City Council Rules as of June 1, 2026).

118. The ordinary and legal meaning of "requested" permitted a speaker to decline.

119. Section 6.3 did not state that a person was "required" to identify himself or herself, nor to state his or her address.

120. The rule did not state that failure to identify oneself constituted disorderly conduct, being out of order, disruption, or a breach of the peace.

121. Other provisions permitted the presiding officer to regulate speaking without recognition, actual or threatened violence, violations of public order, vulgar or abusive conduct, irrelevant remarks, exceeding allotted time, and conduct that actually disrupted the meeting.

122. Those provisions supplied objective tools for maintaining order without compelling a peaceful speaker to disclose his identity.

123. The rules permitted removal only after a person continued to be out of order, but refusal to comply with a merely requested disclosure of the person's identity and/or address was not an established ground for an out-of-order ruling. See, specifically, MCL 15.263(4), which provides, specifically: "A person ***must not be required as a condition of attendance at a meeting of a public body to register or otherwise provide his or her name or other information or otherwise to fulfill a condition precedent to attendance***." (emphasis added).

124. MCL 15.263(5) separately requires that a person be permitted to address a meeting of a public body under rules established and recorded by that public body.

125. MCL 15.263(6) prohibits excluding a person from a meeting otherwise open to the public "***except for a breach of the peace actually committed at the meeting***." (emphasis added).

126. An internal declaration that a person is "out of order" does not by itself establish an actually committed breach of the peace.

127. Refusing to identify oneself and/or one's address as a condition of being allowed to speak publicly during public comment sessions does not constitute a "breach of the peace" or otherwise disorderly conduct sufficient to meet any exception to the exercise of the constitutional right to speak publicly.

**The May 4, 2026 Meeting Put Defendants on Actual Notice**

128. On May 4, 2026, Plaintiff attended a regular meeting of the Hillsdale City Council.

129. During the first public-comment period, which was limited to agenda items, Sessions asked Plaintiff to state his name. The recording, rather than recollection alone, at https://www.youtube.com/watch?v=iWYmGnrDDtY, is alleged as the source of that further confirmation and is designated as **EXHIBIT 9**, subject to authentication and/or a verified transcription of the relevant statements.

130. Plaintiff objected to compelled disclosure and stated in substance that the City officials already knew who he was.

131. Plaintiff stated his name in order to proceed during that first period.

132. Plaintiff attempted to play an audio recording that he contends documented misconduct by Sessions, and which supported his prior formal complaint concerning Sessions (**EXHIBIT 10**, Council Meeting Minutes, May 4, 2026).

133. Sessions interrupted the comment, stated that the recording was not on the agenda, and threatened removal if Plaintiff did not turn it off. *Id*.

134. Before that meeting, Plaintiff had submitted a complaint concerning Sessions to the Hillsdale City Police Department. The Department accepted it and assigned a case number.

135. The first exchange demonstrated that Sessions knew Plaintiff was a critic and that conflict existed before June 1.

136. During the later general public-comment period on May 4, Plaintiff again attempted to address the Council.

137. Plaintiff declined to state his name and address and relied on the Council's then existing pre-June 1, 2026 written rule (**EXHIBIT 1**) and MCL 15.263, the latter of which provides, in relevant part, as follows:

> (1) All meetings of a public body must be open to the public and must be held in a place available to the general public. All persons ***must be permitted to attend any meeting except as otherwise provided in this act***. ***The right of a person to attend a meeting of a public body includes the right to tape-record, to videotape, to broadcast live on radio, and to telecast live on television the proceedings of a public body at a public meeting.*** The exercise of this right does not depend on the prior approval of the public body. However, a public body may establish reasonable rules and regulations in order to minimize the possibility of disrupting the meeting.
>
> ***
>
> (4) A person ***must not be required as a condition of attendance at a meeting of a public body to register or otherwise provide his or her name or other information or otherwise to fulfill a condition precedent to attendance***.
>
> (5) ***A person must be permitted to address a meeting of a public body under rules established and recorded by the public body***. The legislature or a house of the legislature may provide by rule that the right to address may be limited to prescribed times at hearings and committee meetings only.
>
> (6) A person ***must not be excluded from a meeting otherwise open to the public except for a breach of the peace actually committed at the meeting***…. (emphasis added).

138. Plaintiff stated in substance that the City could request his name, but could not convert the request into a mandatory condition of speaking if he refused (**EXHIBIT 9**).

139. Sessions requested advice from Defendant City Attorney Thompson on the record.

140. Thompson acknowledged in substance that the Open Meetings Act did not require identification merely to attend the meeting.

141. Thompson then stated in substance that the City's rules required Plaintiff to identify himself if he wanted to speak.

142. Thompson stated in substance: "the City's rules require that you identify yourself. So if you want to speak, you have to identify yourself." *Id*.

143. That position contradicted the written word "requested" and imposed a condition not found in the established and recorded rule.

144. Plaintiff refused compelled identification and was not permitted to give public comment.

145. The May 4 exchange placed Sessions, Thompson, the Council, and the City on actual notice of both the text of the rule and Plaintiff's constitutional and statutory objection.

**The May 12, 2026 Hillsdale County Board Meeting**

146. On May 12, 2026, Plaintiff attended a regular meeting of the Hillsdale County Board of Commissioners and attempted to address the Board during public comment without stating his name. The video recording, at https://www.youtube.com/watch?v=ISwdy62fz28, is designated as **EXHIBIT 11**, and corroborates notice, anticipated repetition, and the treatment of compelled identification as the operative condition for being allowed to speak at open public meetings.

147. Plaintiff was denied the opportunity to speak after declining to identify himself, consistent with the same compelled-identification condition later enforced against him at the Board's June 23, 2026 meeting described below. *Id*.

**The May 18, 2026 City Council Meeting Referred the Identification Dispute to Committee**

148. Plaintiff did not attend the May 18, 2026 regular City Council meeting.

149. Council Member Bentley raised the public-comment identification dispute near the beginning of the meeting (**EXHIBIT 12**, City Council Meeting Minutes, May 18, 2026).

150. Later in the meeting, at approximately the 1:15:00 mark of the video recording, Council Member Bob Flynn suggested that the Operations and Governance Committee meet to consider changing the language of Section 6.3 by changing the word "requested" to "required." The video recording, at https://www.youtube.com/watch?v=kgDGpRIoomY, is designated as **EXHIBIT 13**, and corroborates notice, anticipated repetition, and the treatment of compelled identification as the operative condition for being allowed to speak at open public meetings.

151. During that discussion, Bentley suggested that Plaintiff be invited to attend the resulting Committee meeting.

152. Plaintiff was never invited to, and did not attend, the May 21, 2026 Operations and Governance Committee meeting described below. Plaintiff states that he first learned of Bentley's suggestion, and of the manner in which the referral was made, upon reviewing the official video recording of the May 18, 2026 meeting.

**The Committee Recommends an Unconstitutional and Unlawful Rule Change**

153. After the May 4 dispute, the public-comment identification issue was referred to the Operations and Governance Committee.

154. On May 21, 2026, the Committee considered the changes to Section 6.3. (**EXHIBIT 14**, City Council Meeting Agenda).

155. At the meeting, Committee Chair William Morrisey read the existing Section 6.3 language. The recording, rather than recollection alone, is alleged as the source of that further confirmation and is designated as **EXHIBIT 15**, subject to authentication and/or a verified transcription of the relevant statements.

156. The Committee materials identified the existing word as "requested."

157. Despite the clear language in MCL 15.263 quoted above, the Committee recommended changing "requested" to "required."

158. The Committee also recommended allowing City residents to provide their ward instead of a full street address and non-City residents to provide their city, village, or township of residence.

159. The recommendation was not final Council action and did not amend the rules.

160. The recommendation confirmed that the existing rule did not already contain a mandatory identification requirement.

161. It also confirmed that City officials understood formal adoption was required before a new mandatory condition could be enforced.

**The June 1 Agenda Placed Public Comment Before the Proposed Amendment**

162. The June 1 agenda placed "Public Comments on Agenda Items" before "New Business." (**EXHIBIT 16**, June 1, 2026 Agenda for City Council Public Meeting)

163. The agenda placed "Approval of Amendments to Council Rules of Procedures" under New Business, Item IX(C). *Id.*

164. The mandatory language therefore had not been considered or adopted when Plaintiff approached the podium.

165. The existing written rule using "requested" remained the established and recorded rule during the public-comment period.

**Sessions Enforced an Unwritten Requirement and Denied Plaintiff Recognition**

166. At the beginning of public comment at the June 1, 2026 meeting, Sessions announced that speakers must state their full names and addresses and limit comments to three minutes. The recording, rather than recollection alone, at https://www.youtube.com/watch?v=vlMY4dyRPfE&t=3464s, is alleged as the source of that further confirmation and is designated as **EXHIBIT 17**, subject to authentication and/or a verified transcription of the relevant statements.

167. Plaintiff challenged whether Sessions intended to enforce the proposed amendment before the Council voted on it.

168. Sessions responded that he was relying on his authority as presiding officer to interpret the rules.

169. Sessions interpreted "requested" to mean "required."

170. Plaintiff stated that this interpretation was directly contrary to the current written rule.

171. Plaintiff also stated that the proposed amendment had not yet been adopted.

172. During the exchange, Sessions acknowledged in substance that his interpretation was against the rule as written.

173. Despite that acknowledgment, Sessions continued to demand Plaintiff's full name and address as a condition of speaking.

174. Sessions called a recess at approximately 7:05 p.m.

175. Plaintiff remained at or near the podium while asserting his objection.

176. The meeting resumed at approximately 7:15 p.m.

177. Sessions again read the rules and called Plaintiff out of order for refusing the mandatory interpretation.

178. Sessions did not identify violence, a threat, property damage, vulgarity, or an actual breach of the peace as the basis for the ruling.

179. The basis was Plaintiff's refusal to obey a disclosure requirement that the written rule did not contain.

**The Council Majority Refused to Correct the Ruling**

180. Council Member Bentley moved to override Sessions' ruling and allow Plaintiff to speak (**EXHIBIT 17**).

181. Council Member Paladino seconded the motion. *Id*.

182. During discussion, Bentley stated in substance that animosity existed between Plaintiff and Sessions. *Id*.

183. Bentley further stated in substance that the Committee had developed the amendment at Sessions' behest and that "the fix is in." *Id*.

184. Bentley proposed allowing Plaintiff his three minutes before the Council reached the later rule-change item. *Id*.

185. Bentley, Paladino, and Bruns voted to override the ruling and allow Plaintiff to speak. *Id*.

186. Sessions, Defendants Flynn, Morrisey, Stuchell, and Wolfram, and non-party Council Member Socha voted against allowing Plaintiff to speak. *Id*.

187. The motion failed 3-6. *Id*.

188. The failed override motion did not amend Section 6.3 and did not transform "requested" into "required." *Id*.

189. Sessions nevertheless stated in substance that his interpretation "still stands."

190. Sessions again demanded Plaintiff's name and address and stated that Plaintiff could not speak because Sessions would not recognize him.

**Plaintiff Was Removed Without Committing a Breach of the Peace**

191. Sessions invoked the out-of-order procedure and directed the sergeant-at-arms to remove Plaintiff (**EXHIBIT 17**).

192. Police escorted Plaintiff from the Council chambers.

193. Plaintiff did not threaten anyone.

194. Plaintiff did not engage in violence.

195. Plaintiff did not damage property.

196. Plaintiff did not physically interfere with any person.

197. Plaintiff did not prevent the Council from continuing its meeting.

198. Plaintiff's asserted violation was his refusal to comply with Sessions' personal interpretation of a mandatory identification requirement that had not been adopted.

199. Removal denied Plaintiff the public-comment opportunity and excluded him from the remainder of an otherwise open meeting.

200. Removal also prevented Plaintiff from attending, observing, and commenting on the later item that directly addressed the same identification dispute.

**The Council Adopted Mandatory Language Only After Plaintiff Was Removed**

201. After Plaintiff's removal, the Council proceeded through the agenda and later reached New Business, Item IX(C). (**EXHIBIT 2**, Council Meeting Minutes, June 1, 2026)

202. Assistant City Manager Sam Fry summarized the Committee's recommendation to require, rather than request, a speaker's name and address. *Id*.

203. The Council first amended the proposed revision to state in substance that public commenters must obtain recognition and approval from the presiding officer and must state their name and address, with ward or municipality alternatives for residence information. *Id*.

204. That wording amendment passed 9-0. *Id*.

205. The Council then considered approval of the amendments to the Rules of Procedure as a whole. *Id*.

206. The official minutes state that discussion ensued concerning the earlier public comment and identifying oneself at the podium. *Id*.

207. The final approval passed 8-1, with Bentley voting no. *Id*.

208. The sequence confirms that the mandatory language was adopted only after Defendants had denied Plaintiff comment and removed him for refusing to obey it.

209. The new text continued to require every speaker to disclose his or her name, even where the speaker was peaceful, known to officials, and addressing core political matters.

210. For a non-City resident such as Plaintiff, the amended rule also required disclosure of the city, village, or township of residence.

**<u>Statements and Official Minutes Support Plaintiff's Suppression Theory</u>**

211. During the rule-change discussion, Bentley stated in substance that Sessions had mishandled the matter and treated Plaintiff poorly (**EXHIBIT 17**).

212. Bentley questioned whether the requirement would satisfy the Open Meetings Act or be enforceable. *Id*.

213. Flynn stated in substance that persons could attend anonymously if they merely sat in the audience, but that if they spoke, criticized Council Members, called them names, or affected their

reputations, it would be desirable to know who was doing so. *Id*.

214. That stated rationale connected compelled identification to criticism of officials and their reputations, not to preventing disruption or keeping order. *Id*.

215. Sessions stated in substance that officials had a duty to require speakers to state their names, while also acknowledging that the public-comment podium was the public's podium. *Id*.

216. The approved June 1 minutes expressly state that Sessions read rules "requesting name and address." (**EXHIBIT 2**).

217. The same minutes record Plaintiff's refusal, the 3-6 override vote, Sessions' direction to the sergeant-at-arms, and Plaintiff's removal. *Id*.

218. The minutes later record the 9-0 wording amendment and 8-1 final approval of the Council Rules amendments. *Id.*

219. The official record thus corroborates the central chronology: the rule was still a request when it was enforced as a command, and the command became written policy only after Plaintiff was removed. *Id*.

**<u>Plaintiff Was Removed Again on June 15, 2026</u>**

220. On June 15, 2026, Plaintiff again attended a regular meeting of the Hillsdale City Council and attempted to address the Council during public comment without stating his name and address. The recording, rather than recollection alone, at https://www.youtube.com/watch?v=EHcO4P_bexA, is alleged as the source of that further confirmation and is designated as **EXHIBIT 18**, subject to authentication and/or a verified transcription of the relevant statements.

221. Consistent with the amended Section 6.3 adopted on June 1, 2026, Sessions denied Plaintiff recognition for refusing to identify himself.

222. The official minutes of the June 15, 2026 meeting record that Sessions "read the rules requesting name and address"; that Plaintiff "refused to give name"; that Sessions read the Council's rules

of procedure aloud, called Plaintiff to order, and asked him to sit down "for refusal to state name"; and that Sessions then "asked sergeant of arms for removal of Lashaway from the Council Chambers," after which Plaintiff "was removed" (**EXHIBIT 40**, City Council Meeting Minutes, June 15, 2026). Two weeks after the Council adopted mandatory language, the presiding officer thus still announced the rule as one "requesting" a name and address, yet had Plaintiff removed for declining the request.

223. On information and belief, a Hillsdale County Sheriff's Office officer identified as Luedecker was present for, assisted with, or documented Plaintiff's removal from the June 15, 2026 City Council meeting. On June 20, 2026, Plaintiff requested from the Sheriff's Office the reports, body-camera footage, dispatch records, and communications concerning that removal, including records involving Officer Luedecker (**EXHIBIT 22**).

224. Plaintiff was removed from the meeting.

225. Plaintiff committed no violence, threat, property damage, or other breach of the peace; his asserted offense was again his refusal to comply with the compelled-identification condition.

**The June 23 County-Meeting Removal, Threats, and Preservation Efforts**

226. On June 23, 2026, Plaintiff attended a Hillsdale County Board of Commissioners meeting and attempted to participate in public comment without publicly stating his name. The recording, rather than recollection alone, at https://www.youtube.com/watch?v=hrZu21WabfQ&t=2710s, is alleged as the source of that further confirmation and is designated as **EXHIBIT 19**, subject to authentication and/or a verified transcription of the relevant statements.

227. Plaintiff alleges that the Hillsdale County Board, acting through its presiding officer and participating members, maintained that the County's meeting rules required identification and denied Plaintiff the opportunity to speak. Defendants Wiley, Collins, Benzing, and Leininger are named subject to confirmation of each Commissioner's attendance, vote, statements, notice, direction, approval, or ratification. *Id*.

228. Hillsdale City Police removed Plaintiff from the County Board meeting.

229. Plaintiff remained peaceful and alleges that his refusal to state his name, rather than any violence, threat, or property damage, was the basis for the denial and removal.

230. Statements made during or after the incident indicated that advice attributed to police or Defendant Wisniewski influenced the removal decision, subject to confirmation from the requested body-camera footage and communications.

231. In a contemporaneous signed writing dated June 23, 2026, Plaintiff memorialized that Officer Zimmerman told him the officer had spoken with the prosecutor (**EXHIBIT 20**, June 23, 2026 Litigation Hold, Preservation Demand, Written Statement and Request for Incident Reports).

232. Plaintiff further memorialized that a City Police Officer reported the prosecutor said Plaintiff would be charged with disturbing the peace for exercising his First Amendment rights.

233. Plaintiff further alleges that he was warned that repeating the conduct could result in criminal charges, arrest, or jail.

234. In a second signed writing dated June 23, 2026, and addressed to the Hillsdale City Police Department, Plaintiff invoked MCL 15.231, *et seq*. and requested all body-camera footage and communications with the County Prosecutor's Office concerning his removal from the County Board meeting. (**EXHIBIT 21**, Lashaway Written FOIA Request to Hillsdale City Police Department, June 23, 2026).

235. The two writings were made contemporaneously and are relevant to the existence and source of the reported threat, Plaintiff's resulting chill, the identities of additional participants, and the need to preserve communications and video.

236. Plaintiff names Wisniewski based on the reported pre-prosecution consultation and the alleged attribution captured in law-enforcement recordings, but does not allege that the attribution alone conclusively proves what Wisniewski said or that she joined a conspiracy. Plaintiff is separately seeking

the requested body-camera footage and communications to establish or refute her personal role. (**EXHIBIT 21**, June 23, 2026 FOIA Request to Hillsdale City Police Department)

237. The reported threat nevertheless forms part of the continuing course of deterrence and provides a basis to investigate coordination among local officials concerning Plaintiff's public speech.

**Recorded Encounter with the Hillsdale County Sheriff**

238. During the last week of June 2026, on a date Plaintiff presently cannot identify more precisely because he does not know how to correct the date setting on the body camera he obtained for documenting these events, Plaintiff went to the Hillsdale County Sheriff's Office to report and seek assistance concerning the continuing denial of public comment and threatened enforcement arising from his refusal to disclose his identity.

239. Plaintiff recorded the encounter during the last week of June 2026. The recording is presently identified by its native filename, MOV00005.AVI. The recording, rather than recollection alone, is alleged as the source of that further confirmation and is designated as **EXHIBIT 23** (native file), with the recording and transcription of the conversation designated as **EXHIBIT 4**, subject to authentication and/or a verified transcription of the relevant statements.

240. The recording depicts an interior service-counter area and an official wearing sheriff's-office clothing. During the exchange, the official stated, "I am the sheriff." Plaintiff identifies that official as Defendant Scott B. Hodshire, subject to final authentication by a witness with personal knowledge. *Id*.

241. At the outset, the Sheriff asked whether Plaintiff was recording. Plaintiff answered that he was. The Sheriff directed Plaintiff either to turn off the recording or continue the conversation outside, and the participants moved outside while Plaintiff's recording continued. *Id*.

242. Plaintiff informed the Sheriff that City and County officials had conditioned his participation in public comment on disclosure of his name and had removed him after he refused compelled identification. *Id*.

243. The Sheriff stated in substance that meeting rules required Plaintiff to introduce himself and give his name. The Sheriff further characterized refusal to provide a name as disrupting the meeting or failing to follow the meeting process. *Id*.

244. Plaintiff responded that rules and laws must conform to the Constitution, that the Open Meetings Act permits only reasonable rules, and that conditioning protected public comment on compelled identification violated his First Amendment rights. *Id*.

245. The Sheriff responded in substance that Plaintiff was allowed to speak but that officials wanted his name before he spoke so that they could record it. *Id*.

246. When Plaintiff explained that officials could ask for his name but could not compel disclosure and that he did not have to comply, the Sheriff responded in substance: "Then you're not going to speak." *Id*.

247. The Sheriff further stated in substance that Plaintiff would be "escorted out again" when he did not give his name. That statement corroborates that renewed exclusion was understood and anticipated as the consequence of Plaintiff's continued refusal, without reference to violence, threats, property damage, excessive speaking time, or any other actual disturbance. *Id*.

248. Plaintiff also advised the Sheriff that Plaintiff believed he was being threatened through a City police officer by or on behalf of the County Prosecutor. The Sheriff asked whether Plaintiff had heard the statement directly and suggested that Plaintiff speak directly with the prosecutor. The recording therefore establishes notice to the Sheriff of Plaintiff's report, but Plaintiff does not rely on this recording alone to establish that the prosecutor made the reported threat.

249. The encounter supports Plaintiff's allegations of actual notice, acquiescence in the identity condition, anticipated repetition, chilling effect, and the need for discovery concerning communications among City, County, police, sheriff, and prosecutorial personnel. Standing alone, the recording is not pleaded as establishing every element of the alleged conspiracy.

250. The device-generated visual date stamp appears to display August 6, 2025, while spoken references to the day of the week and an office closure associated with the Fourth of July suggest that the device date may be inaccurate. Plaintiff will confirm the encounter date through the source device, original media, communications, calendars, testimony, and discovery.

251. A preliminary technical review found that the material audio and substantial portions of the visual recording are recoverable, although the AVI contains invalid MJPEG packets affecting some frames. Plaintiff does not presently allege that this technical condition alone proves intentional deletion, alteration, or destruction and will preserve the native file, its cryptographic hash, the source device if available, and all derivative working copies.

**Recorded Confirmation by the Chief of Police**

252. Plaintiff possesses or has access to a recording in which the Hillsdale Chief of Police allegedly confirms in substance that if Plaintiff repeated the conduct at issue – peacefully attempting public comment while refusing compelled identification – Plaintiff would be arrested and jailed.

253. Plaintiff alleges that the Chief's recorded confirmation corroborates the threatened consequences reported by Officer Zimmerman, demonstrates actual notice and ratification by City police leadership, and corroborates advice to law enforcement given by prosecutor Defendant Jamie Wisniewski, which further supports the inference that threatened criminal enforcement was intended to deter repeated protected speech rather than respond to an actual disturbance.

254. The Chief's recording is designated **EXHIBIT 3**. Plaintiff will provide the native recording or an authenticated filing copy and a timestamped transcript excerpt to the extent available and permitted by the Court's procedures for digital exhibits.

**Video Evidence, Records Resistance, and Preservation**

255. Plaintiff has made and collected recordings concerning the public-comment incidents, including personal recordings, public-body meeting recordings, and video represented to have been

produced from official law-enforcement sources.

256. At least thirteen distinct native video files MOV00004.AVI, MOV00005.AVI (already identified as **EXHIBIT 23)**, MOV00006.AVI, MOV00007.AVI, MOV00008.AVI, MOV00012.AVI, MOV00013.AVI, MOV00014.AVI, MOV00040.AVI, MOV00042.AVI, MOV00045.AVI, MOV00046.AVI, and a file presently identified as Unnamed evidence-CH01-20260623-094020-094939.mp4.

257. Plaintiff alleges that one of these recordings produced in response to a public-records request is body-camera footage of a City officer warning Plaintiff of criminal consequences and attributing the warning to the County Prosecutor.

258. Plaintiff relies on that proposition only to the extent confirmed by review, authentication, and the recording itself.

259. Plaintiff further alleges that other recordings concern statements by City police leadership, knowledge of the dispute by County law-enforcement personnel, a denial by Defendant Wisniewski that she directed Plaintiff's charge, arrest, or incarceration, and a later acknowledgment by a police official. These reported subjects are pleaded on information and belief pending review of the complete native recordings and discovery; no allegation is based on the wording or substance of any reporter's query.

260. These recordings constitute evidence of the words and conduct actually captured, the participants' knowledge, inconsistent explanations, whether an actual disturbance occurred, retaliatory intent, and the scope of any coordinated conduct.

261. Plaintiff will identify and provide available recordings through separately designated digital-media exhibits or notices of conventional filing, as permitted by the Court's filing procedures.

262. Where a shorter excerpt is used for convenience, Plaintiff will preserve the complete native source and identify the excerpt's start and end times.

263. Additional official meeting video, body-camera footage, dispatch audio, incident reports, communications, export records, audit logs, and metadata are or may be in the possession, custody, or control of the City, City Police, County Board, County Sheriff, County Prosecutor, or their officers, employees, contractors, or vendors.

264. Plaintiff has sought body-camera footage and related communications through several public-records requests. (**EXHIBITS 20-22**).

265. He alleges that County and other non-City agencies have resisted, delayed, stopped responding, limited, or failed to complete production. The Hillsdale City Police Department is presently responding and cooperating with Plaintiff's investigative efforts.

266. Plaintiff alleges that the incomplete and contested records response has impeded his ability to identify all participants, test the asserted legal basis for removal and threats, and present the complete chronology.

267. Officials acted together to withhold responsive evidence, frustrate lawful access, deter Plaintiff's protected activity, or conceal the conduct alleged here, Plaintiff will rely on the specific communications, acts, and participants established in discovery as additional overt acts.

268. The meetings, removals, contemporaneous objections, written records requests, preservation demands, and anticipated litigation placed Defendants and involved custodians on notice that the recordings, communications, and associated metadata were relevant and must be preserved.

269. On June 20, 2026, Plaintiff submitted a Freedom of Information Act request to the Hillsdale County Sheriff's Office for body-camera footage, reports, dispatch records, and communications concerning his June 15, 2026 removal from the City Council meeting, including records involving Officer Luedecker, but has not received the requested footage (**EXHIBIT 22**).

270. Plaintiff further alleges that local governmental agencies other than the Hillsdale City Police Department have stopped responding to his related correspondence. The City Police Department

remains the only local agency presently communicating and cooperating with his investigative efforts.

271. Plaintiff does not rely on nonresponse alone as conclusive proof of conspiracy. He alleges it as part of the chronology and as a basis for preservation, production, and discovery concerning the completeness of agency searches, custody of recordings, interagency communications, and any retention, deletion, or withholding decisions.

272. Relevant evidence includes original native video and audio files, unedited and edited copies, body-camera files, retention and deletion logs, audit trails, export history, file metadata, dispatch records, text messages, emails, and communications with police, County officials, and prosecutorial personnel.

273. Plaintiff is not presently able to determine whether any responsive evidence has been deleted, overwritten, altered, lost, or destroyed.

274. If discovery establishes that relevant electronically stored information was lost after a duty to preserve arose because reasonable preservation steps were not taken, Plaintiff will seek the curative measures or sanctions authorized by Federal Rule of Civil Procedure 37(e) and other applicable law.

**<u>The July 14, 2026 County Board Meeting: Renewed Denial and Removal</u>**

275. On July 14, 2026, Plaintiff again attended a regular meeting of the Hillsdale County Board of Commissioners and attempted to address the Board during public comment without stating his name.

276. The Board denied Plaintiff the opportunity to speak after he declined to identify himself, consistent with the same compelled-identification condition enforced against him at the Board's June 23, 2026 meeting.

277. Plaintiff was removed from the meeting.

278. Plaintiff committed no violence, threat, property damage, or other breach of the peace.

279. The July 14, 2026 meeting at https://www.youtube.com/watch?v=K8ilsZ80Z8E&t=1058s, is designated as **EXHIBIT 5**, and corroborates notice, anticipated repetition, and the treatment of

compelled identification as the operative condition for being allowed to speak at open public meetings. At approximately 32 minutes into the meeting two law enforcement officers arrive at the meeting and escort Plaintiff out. *Id*.

**The July 20 City Council Meeting Demonstrated That Removal Was Not Necessary**

280. On July 20, 2026, Plaintiff again attended a Hillsdale City Council meeting and attempted to participate in public comment without publicly stating his name.

281. By that date, the amended City rule expressly requiring identification remained in effect.

282. Sessions enforced the amended rule and denied Plaintiff the opportunity to deliver his public comment.

283. Four Council Members opposed the denial and voted to allow Plaintiff to speak.

284. The official minutes of the July 20, 2026 meeting record that, during general public comment, the City Attorney stated that the rules had been changed from "requested" to require identification and that it was "up to chair to recognize the person at the podium"; that Council Member Paladino, seconded by Council Member Bentley, moved to suspend the first sentence of Rule 6.3 requiring a speaker's name and address; and that the motion failed 4-5, with Council Members Bentley, Bruns, Paladino, and Socha voting in favor and Sessions and Defendants Flynn, Morrisey, Stuchell, and Wolfram voting against. The minutes further record that another speaker, Robert Eichler, "refused to state address, sat down," and that "Mayor Sessions asked Lashaway to state name, he refused." (**EXHIBIT 6**).

285. Plaintiff alleges that Sessions and Thompson attempted to stop or limit those Council Members' opposition.

286. Plaintiff was still denied public comment, but he was permitted to remain in the meeting.

287. Plaintiff remained peaceful, was not removed, and the Council meeting continued.

288. The July 20 incident demonstrates that denying public comment and excluding a person from the meeting are distinct government actions.

289. It also demonstrates that Plaintiff's refusal to state his name did not, standing alone, prevent the Council from continuing its meeting or require police removal to maintain public order.

290. The materially different enforcement outcomes, despite the same asserted refusal, support Plaintiff's allegations of arbitrary enforcement and the absence of an objective standard governing removal.

**The July 28, 2026 County Board Meeting**

291. On July 28, 2026, Plaintiff again attended a regular meeting of the Hillsdale County Board of Commissioners and again declined to state his name before addressing the Board.

292. Unlike the County's treatment of Plaintiff at the June 23, 2026 and July 14, 2026 meetings, Plaintiff was permitted to deliver a public comment and was not removed from the meeting.

293. The July 28, 2026 meeting is documented by video recording found at https://www.youtube.com/watch?v=4rRJLz6P1iY&t=538s, and is designated as **EXHIBIT 26**.

**An August 3, 2026 City Council Meeting Incident Involving Another Speaker**

294. Plaintiff did not attend the August 3, 2026 regular City Council meeting.

295. Plaintiff is informed, based on his review of the official video recording, that another speaker, identified as Bob Eichler, approached the podium during public comment and did not state his name.

296. Plaintiff is further informed that at about 1 hour and 30 minutes into the meeting City Attorney Thompson whispered something to Eichler at the podium, after which Eichler stated that he was speaking under duress and identified only his home township rather than his name or address.

297. Plaintiff alleges that Thompson's intervention at the podium during a member of the public's comment was a departure from the City's prior practice, under which the City Attorney did not insert himself into public comment. On information and belief, Eichler is the same speaker who, as alleged above, addressed the County Board without being asked to state his name at its February 10, 2026 meeting.

298. This incident is offered as evidence of the City's continued enforcement of the compelled-identification condition against a speaker other than Plaintiff, and Plaintiff reserves the right to develop through discovery whether Eichler was treated as a critic of incumbent officials or otherwise similarly situated to Plaintiff.

299. The August 3, 2026 meeting is documented by video recording at https://www.youtube.com/watch?v=sGa-zYyDnqg&t=47s, and is designated as **EXHIBIT 24**, subject to authentication and/or a verified transcription of the relevant statements.

**The August 25, 2026 County Board Meeting: Renewed Removal**

300. On August 25, 2026, Plaintiff again attended a regular meeting of the Hillsdale County Board of Commissioners and attempted to address the Board during public comment without stating his name.

301. The Board denied Plaintiff the opportunity to speak after he declined to identify himself.

302. Plaintiff was removed from the meeting.

303. Plaintiff committed no violence, threat, property damage, or other breach of the peace.

304. The August 25, 2026 County Board meeting is documented by video recording at https://www.youtube.com/watch?v=iebU45bViIc&t=637s, and is designated as **EXHIBIT 27**, subject to authentication and/or a verified transcription of the relevant statements.

**The September 8, 2026 County Board Meeting: Renewed Denial, a Misstated Legal Basis, and a Proposed Trespass Order**

305. On September 8, 2026, Plaintiff attended a regular meeting of the Hillsdale County Board of Commissioners and again attempted to address public comment without first stating his name (**EXHIBIT 8**, Unofficial Transcription of County Board of Commissioners Meeting also seen at https://www.youtube.com/watch?v=XWM3swTqa20, September 8, 2026).

306. The Board's presiding officer read the Board's Rules of Procedure, Bylaw 5.13-3: each speaker would have the floor for no more than five minutes absent an extension granted by the Board; an

individual could not speak more than once during the period set aside for public comment; public comment was to be directed to the Board; and the Board would not interact during public comment. *Id*.

307. When Plaintiff approached to speak without stating his name, a Board official pressed him to state his name before discussing his topic, notwithstanding that Plaintiff was already known to the Board from his repeated prior appearances described above. *Id*.

308. Plaintiff again objected that the Board's rule could not lawfully condition his right to speak on compelled self-identification and referenced the Michigan Open Meetings Act. *Id*.

309. A Board official responded in substance that a person may attend a meeting without signing in, but that a person who wishes to speak "must follow the board's rules," which the official stated required Plaintiff to state his name. *Id*.

310. In discussing the Board's five-minute time limit on public comment, a Commissioner cited case law and Michigan Attorney General Opinion No. 5332 (1978) as authority. Opinion No. 5332 addresses only a public body's authority to impose reasonable time limits on public comment and related participation rights; it contains no discussion of, and does not authorize, any requirement that a speaker disclose his name as a condition of being permitted to address the Board. To the extent Defendants rely, or later rely, on Opinion No. 5332 or similar authority to justify compelled self-identification, that reliance misstates the opinion's actual holding. *Id*.

311. A Commissioner then moved, on the record, that the Board direct counsel to prepare an order of trespass against Plaintiff barring him from this body's future proceedings, stating in substance that Plaintiff "has been removed from proceedings of this body" on "multiple occasions" and citing his "continued disruption at a public meeting" as the asserted basis. *Id*.

312. A second Commissioner objected on the record that a person may be excluded from a meeting only for an actual breach of the peace committed at that meeting, questioned whether a prospective order permanently barring Plaintiff from all future Board meetings was lawful under the Open

Meetings Act, and requested that the Board consult counsel before acting further. The Board agreed to consult counsel before proceeding. *Id*.

313. Plaintiff alleges that this exchange, memorialized on the recording described below, demonstrates that Defendants' asserted basis for excluding Plaintiff was, and remains, his repeated peaceful refusal to surrender his anonymity, not any violence, threat, property damage, or other breach of the peace actually committed at that or any other meeting. *Id*.

314. The Board thereafter recessed the meeting and directed that a law-enforcement officer be summoned to remove Plaintiff. *Id*.

315. During the ensuing recess, Plaintiff attempted, on his own initiative, to reach the Hillsdale County Sheriff's Office directly, while other officials had separately summoned officers to escort Plaintiff from the building. *Id*.

316. Plaintiff stated on the recording, in substance, that this was the sixth time he had been removed or excluded from a public meeting. *Id*.

317. Plaintiff was again removed from the meeting without having committed any violence, threat, property damage, or other breach of the peace; his asserted offense was again his refusal to state his name before addressing the Board. *Id*.

318. The proposed trespass order is an escalation of the retaliatory course of conduct alleged throughout this Complaint. Unlike the prior single-meeting removals alleged above, a trespass order would purport to categorically and prospectively bar Plaintiff from attending or addressing any future meeting of the Board, without regard to whether Plaintiff commits any breach of the peace at any such future meeting. Such a categorical, forward-looking exclusion exceeds what MCL 15.263(6) permits even where a breach of the peace has actually occurred, because that statute authorizes exclusion only from "a meeting" upon "a breach of the peace actually committed at the meeting," not a standing ban on all future meetings based on past, non-violent refusals to self-identify.

319. Defendants have not disavowed the September 8, 2026 proposal, and Plaintiff is informed and believes that Defendants continue to consider whether to direct counsel to prepare and issue an order of trespass against him. That threatened action is not merely speculative: it was moved on the record by a sitting Commissioner, its stated predicate, Plaintiff's repeated and peaceful refusal to identify himself, already exists, and Defendants have taken no steps to disclaim or withdraw it.

320. Plaintiff intends to continue attending and attempting to address meetings of the Board and the Council, and each time he does so he continues to face the same unlawful condition on his right to speak. Plaintiff's continued attempts to exercise his rights, and Defendants' continued enforcement of the unconstitutional identification condition against him, do not excuse or waive Defendants' liability for any occasion on which that condition is enforced; each enforcement is alleged as an independent, actionable violation, in addition to being part of the continuing course of conduct alleged herein.

**<u>The September 8, 2026 City Council Meeting</u>**

321. In addition to the County Board meeting described above, the Hillsdale City Council also held a regular meeting on September 8, 2026. The recording, rather than recollection alone, at https://www.youtube.com/watch?v=MsWo2B0No6o, is alleged as the source of that further confirmation and is designated as **EXHIBIT 25**, subject to authentication and/or a verified transcription of the relevant statements.

322. Plaintiff attended that meeting and again attempted to address the Council during public comment without stating his name and address.

323. Consistent with the amended Section 6.3, Plaintiff was denied recognition and was removed from the meeting.

324. Plaintiff committed no violence, threat, property damage, or other breach of the peace.

**Chilling Effect, Injury, and Future Intent**

325. Plaintiff is a known critic of Defendant Sessions and other local officials and has filed complaints, submitted written objections, and attempted to speak publicly about government conduct.

326. Plaintiff was denied public comment at the May 4 (City Council), May 12 (County Board), June 1 (City Council), June 15 (City Council), June 23 (County Board), July 14 (County Board), July 20 (City Council), August 25 (County Board), September 8 (City Council and County Board), and September 21 (City Council) meetings after disputing mandatory self-identification.

327. Plaintiff was removed from the June 1, June 15, September 8, and September 21 City Council meetings and the June 23, July 14, August 25, and September 8 County Board meetings, but was allowed to remain at the July 20 City Council meeting and was not removed from the May 12 or July 28 County Board meetings.

328. By contrast, as alleged above, from at least December 2025 through February 2026 Plaintiff addressed both the City Council and the County Board without stating his name, without being denied recognition, and without incident. Nothing about Plaintiff's manner of speaking changed between those meetings and the 2026 removals; what changed was Defendants' treatment of his refusal to identify himself.

329. The repeated denial of speaking time, forced police removals, creation of adverse official records, and reported threats of criminal charges, arrest, or jail would deter a person of ordinary firmness from continuing to speak and petition.

330. Plaintiff has experienced humiliation, distress, apprehension of arrest or prosecution, loss of speaking opportunities, and the burden of seeking records and legal relief.

331. Plaintiff intends to attend and speak at future Hillsdale City Council and Hillsdale County Board of Commissioners meetings on matters of public concern, including criticism of City and County officials and the handling of public comment.

332. Plaintiff desires to speak without being compelled to announce his name or residence information as the price of addressing the City Council and County Board.

333. Any interest Defendants might assert in verifying a speaker's residency or identity could be fully satisfied through internal governmental records — including voter-registration records, property and tax records, utility records, and Defendants' own prior dealings with Plaintiff — without ever requiring Plaintiff to state that information aloud, on the record, at a public meeting that is recorded and distributed to the public.

334. Compelling public disclosure, when private verification was readily available and unused, serves no governmental purpose; it serves only to identify Plaintiff, and through him his home and his family, to any member of the public who might wish to locate, confront, or retaliate against him because of his criticism of local officials. It is that specific and realistic fear — not a generalized unwillingness to speak — that has caused, and continues to cause, Plaintiff to self-censor: to weigh disclosure of his home address against the safety of his household each time he considers whether to exercise his right to address his own government, and, on more than one occasion, to soften, shorten, or withhold criticism he would otherwise have voiced. That self-censorship is itself the injury the First Amendment exists to prevent, whether or not Defendants ever again enforce the identification condition against him.

335. The amended rule remains enforceable, and Defendants have not disavowed its future application to Plaintiff.

336. Plaintiff therefore faces a continuing choice among surrendering anonymity, remaining silent, or attempting to speak and risking renewed denial, removal, referral for prosecution, or now, permanent exclusion by a trespass order.

**<u>Policy, Ratification, and Concerted Action</u>**

337. Plaintiff reincorporates and alleges the preceding paragraphs (1-336) as though fully set forth herein.

338. The challenged conduct was not an isolated mistake by a single employee.

339. On May 4, Sessions and Thompson jointly announced and enforced the City's mandatory interpretation (**EXHIBIT 9**; **EXHIBIT 10**)

340. After Plaintiff objected, the matter was referred to a City committee that recommended formally adopting the exact mandatory language already being enforced.

341. On June 1, Sessions enforced the proposed requirement before adoption and acknowledged the conflict with the written rule. (**EXHIBIT 2**; **EXHIBIT 17**)

342. A Council majority was given a specific opportunity to permit Plaintiff to speak under the existing rule and voted against doing so.

343. The City then used its police authority to remove Plaintiff.

344. The Council subsequently adopted mandatory identification as official municipal policy while expressly discussing the preceding incident.

345. The City continued enforcing that policy against Plaintiff on July 20 by denying him public comment, while the decision to allow him to remain demonstrated that removal was a separate and discretionary enforcement choice (**EXHIBIT 6**; **EXHIBIT 7**).

346. The actions of Sessions, Thompson, the Council majority, police personnel, and any other participants were interdependent and advanced the common objective of preventing Plaintiff from speaking unless he surrendered anonymity.

347. Bentley's statements concerning animosity, Sessions' behest, and that "the fix is in," together with the chronology and later reported officer-prosecutor contact, support a plausible inference of an express or tacit plan (**EXHIBIT 17**).

348. The precise communications among Defendants, police personnel, and prosecutorial personnel are predominantly within government possession and will require discovery.

349. The alleged resistance, cessation of correspondence, delay, or incompleteness by County

and other non-City agencies in producing body-camera footage and related communications supports the need for discovery concerning knowledge, coordination, preservation, and the completeness of the official record. Plaintiff presently alleges that the Hillsdale City Police Department is cooperating (**EXHIBIT 20**; **EXHIBIT 21**; **EXHIBIT 22**).

350. The recorded Sheriff's encounter further demonstrates that County law-enforcement leadership had notice of the identity dispute and understood renewed removal to be the expected consequence of Plaintiff's continued refusal. The recording supports discovery concerning knowledge and coordinated enforcement but is not, by itself, pleaded as conclusive proof of an unlawful agreement (**EXHIBIT 4**).

351. Plaintiff alleges that the common objective extended beyond a single meeting or a single municipal department and included City officials, City police personnel, and, to the extent confirmed by discovery, County, Sheriff, and prosecutorial personnel employed by distinct governmental entities.

352. The overt acts were mutually reinforcing: officials first imposed the identification condition, then formalized it, repeatedly enforced it against Plaintiff, used or invoked law-enforcement authority to remove and deter him, attributed threatened criminal consequences to prosecutorial advice, and allegedly impeded access to evidence bearing on those actions.

353. The sequence, repetition, and complementary roles support an inference that the participants were not merely acting independently in parallel, but knowingly furthered a shared retaliatory objective. Plaintiff will identify each additional agreement, communication, participant, and overt act as records are produced and discovery proceeds.

**The September 18, 2026 Thompson Memorandum**

354. On September 18, 2026, Defendant Thompson, acting in his capacity as City Attorney and County Attorney, issued a written memorandum to Defendant Hillsdale County Board of Commissioners titled "Legality of Board's Rules for Public Comment," to be considered and acted upon by the Board at its next regularly scheduled meeting (**EXHIBIT 28**).

355. Thompson's memorandum describes, without naming him, a "member of the public" who "has repeatedly appeared at meetings of the Board and has attempted to make public comment, but has refused to provide his name," who has argued "that the Board's procedural rule requiring him to state his name before speaking is illegal," and who has, as a result, been "repeatedly" removed from Board meetings. That description is Plaintiff.

356. Thompson's memorandum opines, relying on *Lysogorski v Charter Twp of Bridgeport*, 256 Mich App 297 (2003), two 1977–78 Michigan Attorney General opinions, and *Holeton v City of Livonia*, 328 Mich App 88 (2019), that the Board's rule requiring a speaker to state his name before addressing the Board does not violate the Michigan Open Meetings Act or the First Amendment, and that Plaintiff may lawfully be removed from a meeting for refusing to comply with it.

357. *Holeton* upheld a content-neutral "address-the-chair" rule against First Amendment challenge only because, on that record, "the Holetons did not allege or present any evidence that Brosnan implemented an address-the-chair rule in order to curtail anyone's speech on the basis of the content or viewpoint expressed," "did not allege or present any evidence that the rule was unreasonable for the forum," and it was "undisputed that the Holetons had been able to speak at previous meetings." *Holeton*, 328 Mich App at 95–100.

358. Thompson's memorandum does not apply that limitation to the facts recited in its own Background section. It does not address whether the Board's rule has been applied to Plaintiff evenhandedly, as in *Holeton*, or selectively and because of his repeated challenges to the rule's legality

and his criticism of Board members and County officials, as alleged throughout this Complaint.

359. Thompson's memorandum does not cite, discuss, or distinguish *McIntyre v Ohio Elections Commission*, 514 U.S. 334 (1995), *Watchtower Bible & Tract Society of New York, Inc v Village of Stratton*, 536 U.S. 150 (2002), or *Thomas v Collins*, 323 U.S. 516 (1945) — the body of First Amendment authority addressing compelled disclosure of a speaker's identity as a precondition to speech, as distinct from the regulation of the time, place, or manner of speech addressed by the authorities the memorandum does cite.

360. Both Questions Presented in Thompson's memorandum, and its Conclusion, are framed only in terms of whether an individual may be removed "from a meeting." The memorandum does not opine that a prospective order barring Plaintiff from attending future Board meetings — the trespass order a sitting Commissioner moved for on September 8, 2026, as alleged above — is lawful, even though the request for Thompson's opinion arose directly from that proposal and a Commissioner's stated request to "consult … counsel whether that is allowable."

361. On information and belief, a nearly identical First Amendment challenge to a municipal rule requiring a speaker to state his name and/or address before public comment was pending, at the time Thompson wrote his memorandum, and remains pending, in *Amaya Price v City of Nashua*, U.S.D.C., New Hampshire, Case No. 1:26-cv-00216 (complaint filed March 2026, still pending as of September 26, 2026), on the theory that such a rule "compel[s] speakers to choose between their constitutional right to petition their government and their personal safety." Thompson's memorandum does not disclose to the Board that the constitutionality of the type of rule it defends is a live, actively litigated question.

362. Plaintiff alleges, on information and belief, that Thompson's memorandum was prepared not as an impartial legal opinion but to justify the Board's continued enforcement of the unconstitutional identification requirement against Plaintiff specifically, to supply the Board and County a public litigating position in anticipation of legal action Thompson had reason to know Plaintiff was preparing, and to

pressure and intimidate Plaintiff into compliance with a rule Plaintiff had publicly and repeatedly challenged as unlawful.

363. Thompson's memorandum, delivered to and acted upon by the Board, is further evidence of Defendants' policy, custom, ratification, and final-policymaker approval of the conduct challenged in this Complaint, as alleged more fully elsewhere herein.

364. On September 22, 2026, Defendant Hillsdale County Board of Commissioners placed Thompson's September 18, 2026 memorandum on its own regular meeting agenda, listing it as the first substantive item of correspondence under Agenda Item 6, captioned "Memorandum of Opinion re OMA issue - 09-18-26" (**EXHIBIT 31**, September 22, 2026 Hillsdale County Board of Commissioners meeting agenda).

365. The Board's placement of Thompson's memorandum before it as an agenda item for the Board's consideration is further evidence that the Board received, reviewed, and has acted or is acting on Thompson's memorandum as the Board's own official legal position, and further evidences the policy, custom, ratification, and final-policymaker approval of the conduct challenged in this Complaint alleged throughout.

**The September 21, 2026 Hillsdale City Council Meeting**

366. On September 21, 2026, Plaintiff attended a regular meeting of Defendant Hillsdale City Council (**EXHIBIT 29**, full meeting recording at https://www.youtube.com/watch?v=1RJ8KEVgaLk; **EXHIBIT 30**, contemporaneous short-form clip of Plaintiff's removal at https://www.youtube.com/shorts/3YQZHn4AhXg; both posted by The Adams Times).

367. At the outset of the portion of the meeting reserved for "public comment on agenda items only," the presiding officer announced that City Council rules of procedure required anyone who spoke during public comment to state their name and address and limited comments to three minutes, and stated that "the podium is not open" for any purpose beyond agenda-item comment.

368. When Plaintiff approached the podium, he was immediately told he was required to state his name and address before he had said anything about any agenda item. Plaintiff responded that the requirement was "an unlawful rule."

369. Defendant Sessions, presiding, then read City Council Rule of Procedure 6.5, "Disorderly Conduct," into the record at length, including its provision that "[t]his act of refusal to state your name and address as required to obtain recognition to speak or address the council during the public comment period constitutes a disruption of the orderly conduct of the meeting," and called Plaintiff "out of order" a first time.

370. Plaintiff responded that he was in order. Sessions called Plaintiff out of order a second time and read the further provision of Rule 6.5 that "any person who continues to be out of order after having been called out of order by the presiding officer shall be removed from the council chambers by the sergeant-at-arms upon the request of the presiding officer."

371. Plaintiff stated, on the record, "This is the fourth time[.] [Y]ou guys should really look up the OMA[,] … you should probably read the opinion on it." Defendant Thompson, interjecting as City Attorney and interrupting Plaintiff's attempted public comment, then stated on the record that "there is ample case law that says that you can be required to state your name … as a condition for public comment," that the requirement was authorized "under the open meetings act," and that it was "not unconstitutional under the [F]irst [A]mendment … as … determined by several federal courts and the [C]ourt of [A]ppeals of the [S]tate of Michigan" — language that repeats, almost verbatim, the legal position Thompson himself had advanced in his September 18, 2026 memorandum to the County Board three days earlier, as alleged above, notwithstanding that Thompson's memorandum was addressed to the County Board and concerned the County's rule, not the City's.

372. Plaintiff alleges that, before the events described in this Complaint, the City Attorney did not interject himself into the public-comment period to answer, rebut, or cut off a member of the public at

the podium. Thompson's intervention during Plaintiff's September 21, 2026 comment, like his intervention at the podium during Bob Eichler's comment at the August 3, 2026 City Council meeting described above, reflects a new and escalating practice in which the City's counsel personally polices public comment by known critics.

373. During the same exchange, Sessions repeatedly cut off the podium microphone while Plaintiff was attempting to speak, as captured on the meeting recording (**EXHIBIT 29**; **EXHIBIT 30**).

374. Plaintiff asked, "Am I being thrown out again?" Sessions directed the sergeant-at-arms to "remove the … podium for being out of order." Plaintiff was removed. The entire exchange, from the opening of the podium to Plaintiff's removal, lasted approximately three minutes.

375. Plaintiff did not raise his voice, threaten any person, damage any property, or physically resist, beyond continuing to stand at the podium and argue that the rule was unlawful. No Council member or member of the public other than Plaintiff was removed, called out of order, or otherwise disciplined at the September 21, 2026 meeting.

376. The near-identical legal justification that Thompson personally delivered at the September 21, 2026 City Council meeting, three days after his September 18, 2026 memorandum to the County Board and addressed to a different public body, is further evidence that Defendants' compelled-identification policy and practice was coordinated across the City and County, consistently rehearsed, and applied as a ready-made script rather than as an individualized, case-by-case judgment about any actual disruption Plaintiff caused.

377. The September 21, 2026 meeting also marks a further escalation in the methods used against Plaintiff. In addition to denial of recognition and removal by the sergeant-at-arms, the City's own attorney now personally intervened to rebut and cut short Plaintiff's comment, and the presiding officer silenced Plaintiff's microphone—all within approximately three minutes and before Plaintiff had addressed the substance of any agenda item.

## CLAIMS FOR RELIEF

## COUNT I

## FIRST AMENDMENT - FREEDOM OF SPEECH, RIGHT TO PETITION, AND ANONYMOUS POLITICAL EXPRESSION

***42 U.S.C. § 1983 - As-Applied and Facial Challenge***

378. Plaintiff incorporates paragraphs 1 through 377 as though fully restated.

379. The First Amendment, applied to state and local officials through the Fourteenth Amendment, protects political speech, criticism of government, the right to air grievances and petition for redress, and a speaker's choice to remain anonymous.

380. Anonymous political expression is not a disfavored form of speech; the decision to withhold one's identity may itself protect the speaker and encourage participation in public debate. See *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 342 (1995).

381. The public-comment period of a governmental meeting is at least a limited public forum created so citizens may address officials, criticize government, air grievances, and petition for redress. Restrictions must be reasonable in light of that purpose and viewpoint neutral, and content-neutral time, place, and manner restrictions must serve legitimate governmental interests without unnecessarily burdening speech.

382. Sixth Circuit authority recognizes robust protection for critical public comment and condemns suppressing a peaceful speaker because officials dislike the criticism. See *Ison v. Madison Local School District Board of Education*, 3 F.4th 887 (6th Cir. 2021); *Boddy v. Grech*, 178 F.4th 264 (6th Cir. 2026); *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 520 (6th Cir. 2019) (a city council's policy barring "attacks on people or institutions" at public meetings could be construed as unconstitutional viewpoint discrimination).

383. Compelled disclosure of identifying or residence information before public comment can objectively chill speech and petitioning, particularly on controversial matters, by forcing a critic to choose

among self-identification, silence, or exclusion. See *Moms for Liberty – Wilson Cnty. v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499, 517 (6th Cir. 2025) (Thapar, J., concurring), in which Judge Thapar explained:

> The Board's requirement that speakers announce their home addresses at the beginning of their remarks is little better. Policies that fall short of a direct prohibition on First Amendment expression may nevertheless amount to a constitutional violation when they deter or chill speech. *Laird v. Tatum*, 408 U.S. 1, 11, 92 S. Ct. 2318, 33 L. Ed. 2d 154 (1972); see also *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393, 108 S. Ct. 636, 98 L. Ed. 2d 782 (1988) ("[T]he alleged danger of this statute is, in large measure, one of self-censorship."). Forcing commenters to disclose their home addresses before speaking on controversial or hot-button issues seems particularly likely to silence a would-be speaker. See *Marshall v. Amuso*, 571 F. Supp. 3d 412, 426 (E.D. Pa. 2021). And the Board seemed aware of this chilling effect: After permitting some commenters to proceed without disclosing their addresses, it appears to have enforced the requirement midway through a controversial comment, precisely because it was likely to deter the speaker.[2]

384. Although Judge Thapar's concurrence did not command a majority, the panel's own binding holding on standing independently supports Plaintiff's position here: the Sixth Circuit held that a public body's history of actually enforcing a compelled-identification-type rule against a plaintiff, combined with a script or warning recited before each public-comment period announcing that the rule would be enforced, together establish a "credible threat of enforcement" sufficient for Article III standing to challenge that rule. See Moms for Liberty – *Wilson Cnty. v. Wilson Cnty. Bd. of Educ.*, 155 F.4th 499, 512 (6th Cir. 2025). Here, that same evidentiary showing is not merely available to Plaintiff — it is overwhelming: Defendants actually enforced the compelled-identification condition against Plaintiff on May 4, May 12, June 1, June 15, June 23, July 14, July 20, August 25, September 8, and September 21, 2026, and Defendants' own police, sheriff's, and prosecutorial personnel repeatedly and expressly warned Plaintiff, on the record, that continued refusal to identify himself would result in renewed removal and criminal charges.

---

[2] The Sixth Circuit denied the plaintiffs' preliminary injunction because the conditional requirement had been cured, but the Court remanded to the District Court to address the plaintiffs' core constitutional claims. See *Moms for Liberty v. Wilson Cnty. Bd. of Educ., et al.*, United States District Court, M.D. Tenn. Case No. 23-cv-00211 (cross motions for summary judgment currently pending as of September 20, 2026).

385. Unlike the school board in *Moms for Liberty*, which voluntarily rescinded both challenged rules more than two years before that appeal was decided and whose counsel represented to the court that neither rule would be reinstated during the litigation — representations the Sixth Circuit found sufficient to defeat a showing of likely irreparable harm notwithstanding the plaintiffs' standing, see 155 F.4th at 512-16 — Defendants here have not rescinded the compelled-identification requirement, have disavowed nothing, and have instead continued to enforce it up to and including the September 8, 2026 County Board meeting and the September 21, 2026 City Council meeting, while simultaneously threatening to escalate enforcement through a prospective, categorical trespass order. Defendants' ongoing and unrescinded enforcement therefore presents precisely the "likely," non-speculative threat of continuing constitutional injury that was absent in *Moms for Liberty*, and independently supports Plaintiff's entitlement to preliminary and permanent injunctive relief under the standard set out in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

386. Even if Defendants were to rescind the compelled-identification requirement, or the rule underlying it, at some point during this litigation, that would not moot Plaintiff's claims or extinguish his entitlement to relief. A defendant's voluntary cessation of challenged conduct moots a case only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," a heavy burden the defendant bears. *West Virginia v. EPA*, 597 U.S. 697, 719-20 (2022). That "formidable burden" applies "in all cases" and "holds for governmental defendants no less than for private ones." *FBI v. Fikre*, 601 U.S. 234, 241, 243 (2024). Any change in enforcement practice is entitled to little or no judicial solicitude where, as here, it would rest on nothing more than an informal or internal decision that is "ad hoc, discretionary, and easily reversible," rather than a durable, formally adopted repeal binding on future officeholders. See *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768-69 (6th Cir. 2019). Nor would any such rescission affect Plaintiff's claim for nominal damages for the completed constitutional violations already alleged herein, since a request for nominal damages for a completed injury remains a

live case or controversy regardless of whether a request for prospective relief becomes moot. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 282-84 (2021); *Kareem v. Cuyahoga Cnty. Bd. of Elections*, 95 F.4th 1019, 1027 (6th Cir. 2024) (nominal damages available to redress the retrospective harm caused by self-censorship in response to a credible threat of enforcement, regardless of a defendant's later denial of its own motive).

387. Before adoption of the amendment, Defendants had no established and recorded rule making identification an absolute condition of speaking.

388. Defendants nevertheless denied Plaintiff access to the forum and removed him for refusing to comply with this condition.

389. As applied to Plaintiff, pre-amendment on May 4 and June 1, the requirement was unreasonable, arbitrary, and viewpoint discriminatory.

390. The demand was not reasonable in light of the public-comment forum's purpose and did not further meeting order: Defendants knew Plaintiff, he complied with the time and subject limitations material to the forum, and he committed no actual breach of the peace. Compelling a public announcement of identity or residence information therefore bore no demonstrated connection to preventing disorder in Plaintiff's case. There is "no conceivable governmental interest" that justifies compelling a speaker to publicly announce identifying or residence information before addressing a public body, particularly where, as here, the presiding officer and other officials already knew Plaintiff's identity and had less restrictive means — private verification, if any verification were even needed — available. See *Bd. of Airport Comm'rs v. Jews for Jesus*, Inc., 482 U.S. 569, 575 (1987). See also *Minn. Voters All. v. Mansky*, 585 U.S. 1, 16 (2018) (the government "must be able to articulate some sensible basis" for a speech restriction in a limited public forum); *Miller v. City of Cincinnati*, 622 F.3d 524, 536 (6th Cir. 2010) (same).

391. Any interest Defendants might otherwise assert in verifying a speaker's identity or residency could be satisfied without compelling public disclosure at all. Defendants and their officers already had, or could readily have obtained, access to voter-registration records, property and tax records, utility records, law-enforcement and court records, and their own prior correspondence and dealings with Plaintiff — any of which would permit private verification, if verification were ever needed, without exposing Plaintiff to public identification. Requiring public disclosure instead of relying on the private verification already available to them serves no legitimate governmental purpose; it serves only to identify a speaker — and, through him, his home and his family — to any member of the public who might wish to locate, confront, harass, or retaliate against him because of his speech. It is precisely that risk of exposure that the right to anonymous political speech exists to prevent: "[t]he decision in favor of anonymity may be motivated by fear of economic or official retaliation, by concern about social ostracism, or merely by a desire to preserve as much of one's privacy as possible," and anonymity "exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation ... at the hand of an intolerant society." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-42, 357 (1995). Compelling Plaintiff to publicly announce his address, rather than allowing Defendants to verify it privately if verification were needed at all, caused Plaintiff to self-censor — to weigh his own and his family's safety against his right to address his own government — precisely the harm the First Amendment forbids Defendants from inflicting.

392. Less speech-restrictive and directly relevant means existed to maintain order, including recognition rules, time limits, germaneness requirements, and regulation of actual threats, violence, obstruction, or disruption.

393. The amended rule is facially unconstitutional to the extent it categorically conditions public comment on compelled disclosure of a speaker's identity or residence information without a constitutionally sufficient justification, objective safeguards, or a lawful accommodation for protected

anonymous political speech. It is not merely a hortatory statement of official opinion: it regulates citizen conduct, creates a condition precedent to speaking, and supplies the asserted basis for denial, exclusion, and removal.

394. The amended rule also vests the presiding officer with discretion to grant or deny recognition and approval while compelling identity, creating a risk of selective enforcement against disfavored critics.

395. That risk of selective enforcement was not merely theoretical. On information and belief, Sessions and other presiding officers have permitted other speakers — including those perceived as supportive of, or not critical of, incumbent officials — to address the Council without enforcing the identification requirement against them, while enforcing it against Plaintiff and other known critics of incumbent officials. See *McCullen v. Coakley*, 573 U.S. 464, 485, n .4 (2014) (viewpoint discrimination is shown where a speaker "was prevented from speaking while someone espousing another viewpoint was permitted to do so").

396. Plaintiff will further develop the specific instances of this disparate treatment through discovery, including the official meeting video recordings and minutes already sought herein, but the pattern already apparent from Plaintiff's own attendance at Council and Board meetings — at which speakers aligned with, or unopposed to, incumbent officials routinely addressed the Council and Board without being asked to state their name or address — is itself circumstantial evidence that the identification requirement has been applied not as a neutral, evenhandedly enforced rule, but as a tool selectively wielded against disfavored speech.

397. The disparate treatment is not merely alleged on information and belief. The public bodies' own recordings show that on December 1, 2025, January 13, 2026, February 10, 2026, and February 24, 2026, the City Council and County Board permitted speakers, including Plaintiff, to address them without stating their names; that on February 16, 2026, the City demanded Plaintiff's name immediately after

allowing the preceding speaker to proceed without hers, as Plaintiff rose to address his complaint against the presiding officer; and that on July 28, 2026, the County Board permitted Plaintiff to deliver public comment without stating his name after having removed him for the same refusal on June 23 and July 14, 2026, and before removing him again on August 25 and September 8, 2026 (**EXHIBITS 26, 32, 33, 36–38**).

398. Defendants acted under color of state law because the challenged acts occurred through official meetings, governmental offices and records systems, Council and Board procedures, police authority, and asserted prosecutorial authority, and the conduct was made possible or materially enhanced by the powers of office. See *Zilich v. Longo*, 34 F.3d 359, 364-65 (6th Cir. 1994). Those acts caused a deprivation of Plaintiff's First Amendment rights.

399. On July 20, Defendants applied the amended requirement to deny Plaintiff access to public comment even though he remained peaceful and the meeting continued, further demonstrating that compelled identification was used as a condition of speech rather than as a means of controlling an actual disturbance.

400. The recorded Sheriff's statements further corroborate that disclosure of Plaintiff's name, rather than regulation of any actual disturbance, was treated as the operative condition of access to public comment and that renewed exclusion was anticipated if Plaintiff continued to assert anonymous speech rights.

401. At the June 23, 2026 County Board meeting, the Board and those Commissioners who personally participated allegedly imposed the same compelled-identification condition on Plaintiff's ability to air grievances during public comment and caused, directed, or ratified his removal despite the absence of violence, threat, property damage, or an actual breach of the peace.

402. Defendants Wiley, Collins, Benzing, and Leininger are liable under this Count only if the evidence establishes each person's own nonlegislative participation, direction, approval, enforcement,

police coordination, or ratification of the unconstitutional condition or removal; their offices, Board membership, legislative votes, or political motives alone do not establish individual damages liability.

403. The September 8, 2026 enforcement of the same compelled-identification condition, and the Board's proposal to convert Plaintiff's repeated peaceful refusals into a categorical, prospective trespass order barring him from all future Board meetings, constitute a further and escalated as-applied violation of Plaintiff's First Amendment rights for the reasons alleged above.

404. The persuasive weight of Plaintiff's position is corroborated by well-established authority Thompson's September 18, 2026 memorandum ignores. See *Watchtower Bible & Tract Society of New York, Inc v Village of Stratton*, 536 U.S. 150 (2002) (striking down a permit requirement that would have revealed door-to-door canvassers' identities as part of their advocacy); *Thomas v Collins*, 323 U.S. 516, 539–40 (1945) (a registration requirement imposed as a condition of speaking to the public is itself a restraint on First Amendment rights, regardless of whether it is ever enforced).

405. It is further corroborated by contemporaneous, similarly situated litigation: a First Amendment challenge to a municipal rule requiring speakers to state their name and/or address before public comment, materially indistinguishable from the rule Defendants enforced against Plaintiff, is currently pending in *Amaya Price v City of Nashua*, U.S.D.C., New Hampshire, Case No. 1:26-cv-00216 (complaint filed March 2026, still pending as of September 26, 2026), further establishing that the constitutionality of compelled self-identification as a condition of addressing a public body is a live and unsettled question that Defendants' own rule, and Thompson's September 18, 2026 memorandum defending it, do not resolve in Defendants' favor.

## COUNT II

## FIRST AMENDMENT RETALIATION AND VIEWPOINT DISCRIMINATION

***42 U.S.C. § 1983***

406. Plaintiff incorporates paragraphs 1 through 405 as though fully restated.

407. Plaintiff engaged in protected conduct by criticizing public officials, filing complaints, airing grievances, disputing the mandatory interpretation, seeking public records, running for public office, associating politically, and attempting to address the Council and County Board.

408. Defendants knew of that protected conduct and knew Plaintiff was a critic of Sessions and City government.

409. Viewed individually and cumulatively, Defendants took adverse actions by denying public comment, refusing recognition, declaring Plaintiff out of order, causing repeated police removals, creating or maintaining adverse official records, repeatedly denying him speech, resisting access to responsive evidence, and participating in or facilitating threats of prosecution, arrest, or jail to the extent shown by discovery.

410. The escalating and cumulative course of exclusion, coercive removal, threatened criminal consequences, and records resistance would deter a person of ordinary firmness from continuing to criticize officials, air grievances, seek records, run for office, or petition government, even though Plaintiff persisted.

411. A retaliation claim under the First Amendment generally requires a plaintiff to establish three things. *See DeCrane v. Eckart*, 12 F.4th 586, 593 (6th Cir. 2021). The plaintiff must have engaged in protected speech. The defendant must have taken an adverse action against the plaintiff. And the protected speech must have caused that harmful action. *See Lemaster v. Lawrence County*, 65 F.4th 302, 307 (6th Cir. 2023); *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477, 142 S. Ct. 1253, 212 L. Ed. 2d 303 (2022); *Nieves v. Bartlett*, 587 U.S. 391, 399, 139 S. Ct. 1715, 204 L. Ed. 2d 1 (2019).

412. Plaintiff's protected activity was a substantial and but-for cause of the adverse actions. The immediate responses to his criticism, acknowledged animosity, targeted rule dispute, enforcement before adoption, committee and Council sequence, rationale concerning identification of critics, repeated application to Plaintiff, and escalating official consequences support both temporal and direct causal

inferences. See *Vanderlinden v. City of Warren*, No. 22-11060, 2023 U.S. Dist. LEXIS 174274 (E.D. Mich. Sept. 28, 2023). Causation is further supported, on information and belief, by comparator evidence that speakers perceived as supportive of, or not critical of, incumbent officials were permitted to address the Council and Board without being asked to identify themselves — evidence Plaintiff will develop through discovery. See *McCullen v. Coakley*, 573 U.S. 464, 485, n 4 (2014).

413. The reported consultation with a prosecutor and threat of a disturbing-the-peace charge and later blatantly stating that they were seeking to "trespass" Plaintiff, constitute additional adverse action and support a retaliatory-prosecution or threatened-prosecution theory (**EXHIBIT 8**). See *Blackwell v. Nocerini*, 123 F. 4th 479, 488 (6th Cir. 2024).

414. The July 20 denial, after the earlier removals and reported threats, constitutes additional adverse action and confirms the continuing enforcement of the challenged condition against Plaintiff's protected activity.

415. To the extent Defendants or their agents deliberately resisted or delayed production of responsive recordings and communications because of Plaintiff's protected speech, records requests, or anticipated litigation, that conduct constitutes additional retaliatory action.

416. Defendants' actions were not neutral enforcement of an existing rule; they were directed at Plaintiff's critical viewpoint and refusal to surrender anonymity.

417. Plaintiff's report to the Sheriff and the Sheriff's statement that Plaintiff would be escorted out again if he did not provide his name establish actual notice of the asserted constitutional injury and corroborate a continuing, objectively deterrent threat of renewed enforcement.

418. Retaliation by public officials for protected speech and petitioning was clearly established, and no reasonable official could believe that peaceful criticism or refusal to disclose identity—without disruption, threat, or breach of the peace—authorized retaliatory exclusion, police removal, arrest, or jail. See *Zilich*, 34 F.3d at 364-65. Defendants thereby violated Plaintiff's First Amendment rights under color of state law.

419. Hodshire's recorded statements allegedly confirmed the identification condition and anticipated renewed removal. Wisniewski is liable for retaliation only to the extent evidence establishes her own non-advocative and non-prosecutorial participation—such as pre-prosecution investigative direction, agreement, records conduct, or other conduct outside the protected prosecutorial function—in threatened enforcement intended to deter Plaintiff's protected speech.

420. The September 8, 2026 denial, removal, and proposed trespass order constitute additional and escalated adverse action taken after Plaintiff's continued protected refusal to surrender his anonymity and his continued criticism and petitioning, and further support the causal and retaliatory inference alleged above. A credible, on-the-record threat of retaliatory exclusion, even before it is finally executed, itself works a cognizable First Amendment injury by deterring a person of ordinary firmness from continuing to speak. See *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014).

421. The adverse actions escalated in a pattern that tracks Plaintiff's protected activity. Before his stalking complaint against Sessions and his election-security advocacy, Plaintiff spoke anonymously at both public bodies without incident. Thereafter, he was first singled out for a name demand (February 16, 2026); then denied public comment for refusing it (May 4 and May 12, 2026); then physically removed by police (June 1, 2026 and after); then warned of criminal charges, arrest, and jail (June 23, 2026 and thereafter); then made the subject of a proposed categorical trespass order (September 8, 2026) and of a legal memorandum by the City and County Attorney describing him and defending his removal (September 18, 2026); and, most recently, interrupted at the podium by that same attorney and silenced

by having his microphone cut before being removed yet again (September 21, 2026). Each step followed Plaintiff's continued criticism and his continued, peaceful refusal to surrender his anonymity, and each step increased the cost of speaking.

422. The County Board's change, after Plaintiff's January 27, 2026 agenda presentation on election security, of its long-standing rule permitting residents to be placed on the agenda is further evidence that Defendants responded to the content of Plaintiff's speech by restricting the avenues through which he could deliver it (**EXHIBIT 35**).

## COUNT III

## FOURTEENTH AMENDMENT - FAIR NOTICE, ARBITRARY ENFORCEMENT, AND PROCEDURAL DUE PROCESS

***42 U.S.C. § 1983 - Pleaded in the Alternative***

423. Plaintiff incorporates paragraphs 1 through 422 as though fully restated.

424. The Fourteenth Amendment prohibits deprivation of protected liberty without due process and prohibits rules so standardless or unexpectedly construed that they fail to provide fair notice and invite arbitrary enforcement.

425. Plaintiff possessed protected liberty interests in speaking and petitioning and a statutory right to address the public body under rules established and recorded before the meeting.

426. The written rule informed an ordinary person that identification was requested, not required.

427. Sessions retroactively converted the request into a command through a personal interpretation announced and enforced at the podium.

428. No published standard explained when "requested" would become mandatory, when the presiding officer could deny recognition for refusal, or how peaceful refusal could constitute being out of order.

429. The proposed amendment was still pending, and its later adoption confirmed that the mandatory standard did not previously exist.

430. The override vote did not supply constitutionally adequate process because it applied the unwritten interpretation to Plaintiff without adopting it as a rule, without fair advance notice, and without a neutral decisionmaker or meaningful opportunity to be heard.

431. Defendants' ad hoc construction vested Sessions with unbridled discretion and enabled arbitrary and viewpoint-based deprivation of speech. That discretion was allegedly exercised in a viewpoint-based manner: on information and belief, speakers perceived as supportive of incumbent officials were permitted to address the Council and Board without similar enforcement, while Plaintiff and other known critics were not.

432. Plaintiff was deprived of speaking time and continued attendance and was subjected to police removal without constitutionally adequate notice or process.

433. The June 23 removal and the July 20 decision to deny speech while allowing Plaintiff to remain further demonstrate the absence of a published, objective standard distinguishing noncompliance, disruption, exclusion, and threatened prosecution.

434. The Sheriff's recorded references to rules, regulations, process, and ordinances, combined with the announced automatic consequences of denied speech and renewed removal, further demonstrate the absence of a clear, preexisting, objective standard distinguishing peaceful non-disclosure from an actual disruption or breach of the peace.

435. This Count is pleaded in the alternative to the specific First Amendment theories and to the extent the Court recognizes an independently actionable fair-notice or procedural deprivation.

436. The September 8, 2026 meeting further demonstrates the absence of any published, objective standard distinguishing peaceful non-disclosure from conduct warranting escalation to a categorical, prospective trespass order, and confirms that enforcement of the identification condition remains standardless and susceptible to arbitrary application.

437. The arbitrariness of enforcement is confirmed by the public bodies' own recordings. The same refusal to state a name was, on different occasions, (a) not questioned at all (December 1, 2025; February 10 and February 24, 2026), including immediately after the presiding officer had announced that speakers were to state their names (January 13, 2026); (b) excused for one speaker and demanded of the next (February 16, 2026); (c) met with denial of comment only (May 4, May 12, and July 20, 2026); (d) met with denial of comment and police removal (June 1, June 15, June 23, July 14, August 25, September 8, and September 21, 2026); (e) tolerated entirely, with Plaintiff permitted to speak (July 28, 2026); and (f) proposed as the predicate for a permanent trespass order (September 8, 2026) (**EXHIBITS 5, 7, 8, 9, 11, 17–19, 25–27, 29–30, 32, 33, 36–38**).

438. No published standard explains, and no Defendant has articulated, why the identical peaceful conduct produced each of those different outcomes. The only constant is that the more consequential outcomes were imposed on Plaintiff, a known critic, and that their severity increased over time as his criticism continued.

## COUNT IV

### MUNICIPAL LIABILITY - OFFICIAL POLICY, FINAL DECISIONMAKER, AND RATIFICATION

***42 U.S.C. § 1983; Monell v. Department of Social Services***

439. Plaintiff incorporates paragraphs 1 through 438 as though fully restated.

440. The City and Council are liable where a constitutional violation is caused by an official written policy, a widespread custom or repeated course of enforcement, a decision by an official with final policymaking authority, or knowing ratification of unconstitutional conduct. Plaintiff pleads those routes

in the alternative and does not rely on respondeat superior. See *Vanderlinden v. City of Warren*, No. 22-11060, 2023 U.S. Dist. LEXIS 174274 (E.D. Mich. Sept. 28, 2023). Each route is pleaded with specific facts at ¶¶ 441–452.

441. Sessions acted as the final municipal decisionmaker for recognition and immediate enforcement of Council meeting rules when he denied Plaintiff recognition and ordered removal.

442. The Council majority was presented with the precise constitutional and textual dispute, voted not to override Sessions, and thereby ratified the denial of Plaintiff's speech.

443. The Council then formally adopted mandatory identification as written municipal policy.

444. The May 4, June 1, June 15, July 20, September 8, and September 21 applications demonstrate repeated enforcement rather than an isolated, unauthorized act.

445. The written identification policy, the final enforcement decisions, the Council's informed ratification, and the repeated course of enforcement were each moving forces behind the denial of speech, removal, chilling, and continuing threat of renewed enforcement alleged here. See *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (municipal liability attaches where a policy or custom is the "moving force" behind the constitutional violation). Plaintiff does not rely on a single isolated incident to establish municipal liability: the compelled-identification requirement is itself a written policy that the City adopted, and Sessions, as final decisionmaker, and the Council, through informed ratification, each independently applied and approved that policy across multiple meetings. Proof of a single incident of unconstitutional activity is not required to impose Monell liability where, as here, the incident is caused by an existing, unconstitutional municipal policy attributable to a municipal policymaker. See *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

446. The City is therefore liable for compensatory, nominal, declaratory, and injunctive relief to the extent authorized by law, but Plaintiff does not seek punitive damages against the municipal entity.

447. Hillsdale County and the Hillsdale County Board of Commissioners are liable on the same

alternative Monell theories described above with respect to the Board's own, independent enforcement of a materially indistinguishable compelled-identification condition at its own public meetings.

448. The Hillsdale County Board of Commissioners is Hillsdale County's legislative body and is the final policymaking authority over the conduct of its own meetings, including the adoption and enforcement of its Rules of Procedure governing public comment.

449. On June 23, July 14, August 25, and September 8, 2026, the Board, acting through its presiding officer and participating members, enforced the same compelled-identification condition against Plaintiff's public comment and caused, directed, or ratified his removal despite the absence of any breach of the peace, as alleged above.

450. On September 8, 2026, a sitting Commissioner moved on the record that the Board direct counsel to prepare an order of trespass against Plaintiff; rather than rejecting that proposal as unlawful, the Board agreed only to consult counsel before proceeding, and no Defendant has since disavowed or withdrawn it. The Board's continued, undisavowed consideration of a categorical, forward-looking exclusion is an act of the Board as a body, and reflects a decision, custom, or ratification attributable to the Board's final policymaking authority over the terms on which the public may address it.

451. The repeated application of the same compelled-identification condition to Plaintiff at County Board meetings on May 12, June 23, July 14, August 25, and September 8, 2026, without an intervening published rule change, reflects a widespread practice or custom of the Board sufficiently persistent to constitute the County's own policy for purposes of Monell liability.

452. Hillsdale County and the Hillsdale County Board of Commissioners are therefore liable for compensatory, nominal, declaratory, and injunctive relief to the extent authorized by law, on the same alternative theories alleged above against the City and Council, but Plaintiff does not seek punitive damages against either municipal entity.

## COUNT V

## CIVIL CONSPIRACY TO DEPRIVE PLAINTIFF OF CONSTITUTIONAL RIGHTS AS A CITIZEN

### *42 U.S.C. § 1983*

453. Plaintiff incorporates paragraphs 1 through 452 as though fully restated.

454. Section 1983 supplies a remedy when persons acting under color of state law agree to deprive a citizen of rights secured by the Constitution, one or more conspirators commit overt acts in furtherance of that agreement, and those acts cause constitutional injury. Each individual is liable only for his or her own knowing participation or overt conduct, not merely because of office, association, or presence. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988).

455. The constitutional rights targeted here were Plaintiff's rights as a citizen to criticize government, engage in political advocacy and candidacy, associate with others, petition officials for redress, seek public records, speak anonymously on public affairs, address public bodies under lawful rules, receive fair notice, and remain free from arbitrary or retaliatory use of governmental and police power.

456. This Section 1983 conspiracy claim does not depend on Plaintiff's membership in a protected class. It rests on the alleged agreement to use governmental authority to cause the underlying First and Fourteenth Amendment deprivations pleaded in Counts I through III.

457. An express written agreement is unnecessary. A tacit agreement, common understanding, and interdependent decisionmaking may be inferred from specific circumstantial facts, coordinated conduct, complementary roles, and actions that would be unlikely to occur independently. Official statements, resolutions, ordinances, votes, and other legislative acts may supply evidence of hostility,

notice, motive, agreement, or ratification even when a protected legislative act is not itself the basis for individual damages. See *Zilich*, 34 F. 3d at 364-65; *Rieves v. Town of Smyrna*, 67 F. 4th 856 (6th Cir. 2023).

458. A plaintiff need show only a single plan, that each alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury; each conspirator need not have known all of the details of the plan or all of its participants. *Spadafore v. Gardner*, 330 F.3d 849, 853–54 (6th Cir. 2003). Although conspiracy claims must be pleaded with some degree of specificity, *id.* at 854, Plaintiff pleads the specific supporting facts in ¶¶ 461–465 below.

459. Plaintiff alleges that the agreement developed over a period of years after he criticized local officials, complained of misconduct, sought records, and ran for public office. His candidacy and continued criticism supplied political motive, made his opposition visible, and placed the participants on notice that he intended to remain active in local public affairs.

460. The shared objective was broader than enforcement of a neutral meeting rule. It was to identify, monitor, deter, discredit, silence, punish, or remove Plaintiff when he exercised protected political rights, to quell his criticism and prevent him from airing grievances, and to make continued participation carry the prospect of exclusion, police intervention, prosecution, or burdensome efforts to obtain evidence and redress.

461. Sessions and Thompson jointly announced and enforced the mandatory interpretation on May 4 after Plaintiff had engaged in the earlier protected activity alleged above. The Committee then proposed the textual change at Sessions' behest, according to Bentley's statement.

462. On June 1, Sessions enforced the same command before adoption; the Council majority, with notice of the textual and constitutional objection, voted against allowing Plaintiff to speak; police removed him; and the Council then formalized the command after his removal. The vote and ordinance

are pleaded as evidence of notice, motive, agreement, municipal policy, and ratification; individual damages liability is based on each Defendant's own actionable nonlegislative enforcement, direction, coordination, threats, or other overt acts.

463. The June 23 County removal, reported police-prosecutor consultation, warnings of charges, arrest, or jail, the Sheriff's recorded anticipation that Plaintiff would be removed again, and the July 20 renewed denial of comment were mutually reinforcing acts that extended the alleged objective across meetings and governmental entities.

464. The alleged conspirators did not all have to perform the same act. City policymakers supplied or ratified the speech restriction; participating officials allegedly enforced or directed its application; police supplied coercive removal authority; County and Sheriff personnel allegedly reinforced the expected consequences; and any prosecutorial or records personnel shown by discovery to have knowingly joined the plan performed complementary, nonimmune functions.

465. The close sequence, acknowledged animosity, statement that 'the fix is in,' stated desire to identify persons who criticize officials, knowledge of Plaintiff's candidacy and opposition, repeated application to Plaintiff, cross-entity contacts, and escalating consequences support a plausible inference of a common understanding rather than merely parallel conduct.

466. In addition to the specific facts in ¶¶ 461–465, Plaintiff alleges on information and belief that communications identifying him, discussing his candidacy or criticism, planning or approving restrictions, requesting police presence or removal, consulting about potential charges, and responding to his records and preservation demands are principally within Defendants' possession and will further identify the participants, agreement, motive, and overt acts. The use of official time, offices, meetings, communications, records systems, police power, and asserted prosecutorial authority supplies the required nexus to governmental power. See *Zilich*, 34 F. 3d at 364-65.

467. To the extent established by records or discovery, coordinated resistance to producing or

preserving recordings and communications was a further overt act intended to conceal the participants or chronology, protect the shared retaliatory objective, chill continued petitioning, or burden Plaintiff's access to judicial redress. Delay or an incomplete response alone is not pleaded as conclusive proof of agreement.

468. Each Defendant is alleged to be responsible under this Count only to the extent that evidence establishes that the person knowingly joined the common plan, shared its unconstitutional objective, or committed an overt act to advance it. Status, office, legislative activity, political motive, or mere presence alone is not alleged to establish conspiratorial liability.

469. The conspiracy and its overt acts caused the underlying First and Fourteenth Amendment injuries, including lost speaking opportunities, exclusion from public meetings, chilling of political advocacy and candidacy, apprehension of arrest or prosecution, emotional and dignitary injury, and burdens incurred seeking records and judicial relief.

470. As to Wiley, Collins, Benzing, and Leininger, Plaintiff alleges participation in the conspiracy only to the extent evidence establishes that a particular Commissioner knowingly joined the common plan and committed a nonlegislative overt act through enforcement of the County Board's denial of comment, direction or ratification of removal, police or interagency coordination, threats, or later concealment or obstruction. Collective officeholding, a legislative vote, or political motive alone is not alleged as an agreement or basis for individual damages.

471. Hodshire's alleged overt acts include his recorded endorsement of compelled identification, his statement that Plaintiff would be escorted out again, and any related nonlegislative enforcement, direction, coordination, or records conduct established in discovery. Wisniewski's alleged participation is limited to pre-prosecution investigative advice or direction, agreement to use threatened enforcement to deter speech, records or preservation conduct, or another non-advocative act outside the protected prosecutorial function, as established by recordings, communications, or discovery. A

prosecutor who gives legal advice to police, or who performs investigative functions normally performed by a detective or police officer, is not entitled to absolute immunity for that conduct. *Burns v. Reed*, 500 U.S. 478, 492–96 (1991); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273–76 (1993).

472. The September 8, 2026 proposal for a trespass order, made by a sitting County Commissioner and expressly premised on Plaintiff's prior removals from this and other public bodies, is a further overt act in furtherance of the alleged common objective and confirms that the participants' shared aim extends to permanently silencing Plaintiff rather than merely enforcing a neutral meeting rule.

473. Further supporting the inference of a common plan, the City and the County abandoned their prior practice of permitting anonymous public comment at nearly the same time; both began enforcing the new condition against the same speaker within days of each other in May 2026; both were advised on the issue by the same attorney, Defendant Thompson, serving simultaneously as City Attorney and County Attorney; and the legal justification Thompson prepared for the County Board on September 18, 2026 was recited by Thompson himself at the City Council three days later, on September 21, 2026, to silence and remove Plaintiff.

## <u>COUNT VI</u>

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

***Michigan Common Law - Pleaded in the Alternative***

474. Plaintiff incorporates paragraphs 1 through 473 as though fully restated.

475. Intentional infliction of emotional distress requires extreme and outrageous conduct, intent or recklessness, causation, and severe emotional distress. *Doe v. Mills*, 212 Mich. App. 73, 91-92 (1995).

476. Plaintiff alleges a connected course of conduct, not an isolated disagreement: repeated suppression of political speech, enforcement of a knowingly unadopted condition, removal by police despite no breach of the peace, reported threats of prosecution, arrest, and jail, cross-entity reinforcement of the threatened consequences, and alleged resistance to disclosure or preservation of the recordings

needed to obtain redress.

477. The alleged conduct exploited governmental authority and the coercive power of police and threatened prosecution to punish and intimidate a known critic and former candidate for public office for continuing to speak, petition, seek records, and challenge officials.

478. Taken together and as proven against each participant, the deliberate, escalating, and retaliatory use of governmental power was extreme and outrageous and went beyond ordinary political disagreement, administrative error, discourtesy, or a good-faith dispute over meeting procedure.

479. The participating individual Defendants intended to cause emotional distress or acted with reckless disregard of the near certainty that repeated public silencing, removal, threats of arrest or jail, and obstruction of access to evidence would cause such distress.

480. The conduct caused Plaintiff severe emotional and dignitary distress, including humiliation from being repeatedly silenced and removed in front of his fellow citizens; persistent anxiety and apprehension of arrest, prosecution, or jail whenever he attempts to attend or address a public meeting; physical illness following his removal from the September 21, 2026 City Council meeting; exhaustion from the cumulative strain of months of repeated exclusions, threats, and efforts to obtain records and redress; a continuing sense that he is being targeted and harassed by the officials who govern his community; and fear for his own safety and the safety of his family arising from the escalating use of police and prosecutorial power against him.

481. The alleged retaliatory and malicious purpose defeats subjective good-faith immunity for eligible lower-ranking actors to the extent proven. This Count excludes protected acts within MCL 691.1407(5) and seeks relief against each individual only for that person's own actionable, nonimmune conduct.

482. Plaintiff is entitled to compensatory and legally recoverable exemplary damages according to proof.

## COUNT VII

## CIVIL CONSPIRACY UNDER MICHIGAN LAW

***Derivative of the Actionable State-Law Tort - Pleaded in the Alternative***

483. Plaintiff incorporates paragraphs 1 through 482 as though fully restated.

484. A Michigan civil conspiracy is a combination of two or more persons, acting in concert, to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The claim is derivative and requires a separate, actionable underlying tort.

485. The underlying tort is the intentional-infliction-of-emotional-distress claim pleaded above, but only to the extent that tort is adequately established against a nonimmune participant. Plaintiff does not presently assert a separate claim for abuse of process. If a summons, citation, warrant, criminal complaint, trespass order, or other legal process issues against Plaintiff and is used for an improper collateral purpose, including through the trespass order proposed at the September 8, 2026 County Board meeting, Plaintiff reserves the right to seek leave to amend or supplement this Complaint under Fed. R. Civ. P. 15(a)(2) and 15(d) to assert that claim.

486. Plaintiff alleges an express or tacit common plan to use speech restrictions, removal authority, threatened or actual process, and control over responsive records to identify, deter, punish, silence, or burden him because of his criticism, candidacy, association, records activity, and petitioning.

487. Overt acts included the repeated denial of public comment; enforcement of the mandatory identification condition before adoption; direction, approval, or execution of removal; reported consultation and warnings concerning prosecution, arrest, or jail; cross-entity reinforcement of those consequences; and any coordinated misuse of process or concealment, withholding, or destruction of evidence established in discovery.

488. The alleged participants performed complementary roles, but each individual Defendant is liable under this Count only if evidence establishes knowing participation in the agreement and an

actionable underlying tort. Status, office, parallel conduct, legal representation, or mere presence does not alone establish agreement.

489. The malicious and retaliatory objective establishes lack of subjective good faith for eligible lower-ranking governmental actors. This Count does not impose derivative liability for acts protected by MCL 691.1407(5), although communications or conduct of an immune official may be relevant evidence of the agreement and the acts of nonimmune participants.

490. The conspiracy and underlying tortious acts proximately caused Plaintiff's injuries and damages according to proof.

## COUNT VIII

## MICHIGAN OPEN MEETINGS ACT - DENIAL OF PUBLIC COMMENT UNDER UNESTABLISHED OR UNREASONABLE RULES

***MCL 15.263(5)***

491. Plaintiff incorporates paragraphs 1 through 490 as though fully restated.

492. MCL 15.263(5) requires that a person be permitted to address a meeting of a public body under rules established and recorded by the public body.

493. The Council is a public body, and Plaintiff attempted to address its meeting.

494. The established and recorded rule then stated that a speaker was "requested" to state a name and address.

495. No established and recorded rule required Plaintiff's name and address as a condition of speaking when Defendants denied comment and removed him.

496. The proposed amendment had not yet been adopted, and a failed override motion did not amend the rules.

497. Defendants denied Plaintiff the right to address the public body under the rules then established and recorded, in violation of MCL 15.263(5).

498. After amendment, Defendants again denied Plaintiff public comment on July 20 solely because he declined to publicly state his name.

499. As applied on July 20, the mandatory identification condition was not a reasonable rule for maintaining order because Plaintiff remained peaceful, was allowed to remain, and the meeting continued.

500. The amended rule therefore also violates MCL 15.263(5) to the extent it conditions public comment on compelled identity disclosure unrelated to speaking time, topic, recognition order, or an actual disturbance.

501. The Hillsdale County Board was also a public body, and Plaintiff attempted to address it during the June 23, 2026 meeting under the Board's established and recorded rules.

502. To the extent Defendants Wiley, Collins, Benzing, and Leininger personally participated in or intentionally approved denial of County public comment under an unestablished or unreasonable compelled-identification condition, their conduct also violated MCL 15.263(5), subject to proof of each Defendant's role and the remedies authorized by law.

503. The Hillsdale County Board again denied Plaintiff public comment on September 8, 2026, solely because he declined to state his name, under the same unestablished or unreasonable compelled-identification condition alleged above. To the extent Defendants Wiley, Collins, Benzing, or Leininger personally participated in, directed, or ratified that denial, their conduct also violated MCL 15.263(5).

504. Defendants likewise denied Plaintiff public comment, solely because he declined to state his name, at the May 4, June 15, September 8, and September 21, 2026 City Council meetings and the May 12, June 23, July 14, and August 25, 2026 County Board meetings. Each such denial is alleged as a separate violation of MCL 15.263(5).

## COUNT IX

## MICHIGAN OPEN MEETINGS ACT - EXCLUSION WITHOUT AN ACTUAL BREACH OF THE PEACE

***MCL 15.263(6)***

505. Plaintiff incorporates paragraphs 1 through 504 as though fully restated.

506. MCL 15.263(6) prohibits excluding a person from a meeting otherwise open to the public except for a breach of the peace actually committed at the meeting.

507. The June 1 Council meeting was otherwise open to the public.

508. Police removed and excluded Plaintiff from that meeting.

509. Plaintiff committed no actual breach of the peace; he peacefully refused to comply with an identification requirement not then contained in the written rule.

510. Calling Plaintiff "out of order" under an internal procedure did not transform peaceful refusal into a breach of the peace.

511. Defendants thereby violated MCL 15.263(6).

512. The June 23, 2026 County Board meeting was otherwise open to the public, Plaintiff was removed, and he alleges that he committed no breach of the peace. To the extent a named County Commissioner personally caused, directed, or intentionally approved that exclusion, the conduct violated MCL 15.263(6), subject to proof and applicable defenses.

513. The September 8, 2026 County Board meeting was likewise otherwise open to the public. Plaintiff was again removed without committing any breach of the peace. To the extent a named County Commissioner personally caused, directed, or intentionally approved that removal, the conduct violated MCL 15.263(6). The Board's further proposal to direct counsel to prepare a standing order of trespass barring Plaintiff from all future meetings, untethered to any breach of the peace at any specific future meeting, would, if adopted or enforced, independently violate MCL 15.263(6) on its face.

514. Plaintiff was likewise excluded from the June 15, September 8, and September 21, 2026 City Council meetings and the July 14 and August 25, 2026 County Board meetings, each otherwise open to the public, without having committed any breach of the peace at any of those meetings. Each such exclusion is alleged as a separate violation of MCL 15.263(6).

## COUNT X

## DECLARATORY AND INJUNCTIVE RELIEF UNDER THE MICHIGAN OPEN MEETINGS ACT

### *MCL 15.271*

515. Plaintiff incorporates paragraphs 1 through 514 as though fully restated.

516. MCL 15.271 authorizes an action to compel compliance with the Open Meetings Act and enjoin further noncompliance.

517. A real and continuing controversy exists concerning the authority to compel a speaker's identity and residence information and to remove a peaceful person for refusing.

518. Defendants enforced the amended rule against Plaintiff on July 20, September 8, and September 21, 2026, Plaintiff intends to speak at future meetings, the rule remains operative, and Defendants have not disavowed continued enforcement.

519. Plaintiff is entitled to a declaration of the violations and an injunction against enforcing unestablished rules or excluding a person absent an actually committed breach of the peace.

520. Plaintiff also seeks an injunction against enforcing the amended identification requirement to the extent it violates the Open Meetings Act or the federal Constitution.

521. MCL 15.271 further provides that a person who succeeds in obtaining relief in an action to compel compliance with, or to enjoin further noncompliance with, the Open Meetings Act "shall recover court costs and actual attorney fees for the action." That fee-shifting remedy does not require Plaintiff to prove that any Defendant acted intentionally, and is independent of, and in addition to, the damages, costs, and fees separately available under MCL 15.273 for an official's intentional violation. Plaintiff seeks an

award of his court costs and actual attorney fees under MCL 15.271 upon obtaining the declaratory and injunctive relief sought in this Count.

## COUNT XI

## INTENTIONAL VIOLATION OF THE MICHIGAN OPEN MEETINGS ACT

## *MCL 15.273*

522. Plaintiff incorporates paragraphs 1 through 521 as though fully restated.

523. MCL 15.273 imposes personal civil liability on a public official who intentionally violates the Open Meetings Act for actual and exemplary damages of not more than $500.00 total, together with court costs and actual attorney fees. The OMA provides damages for an intentional violation of the Act. MCL 15.273. *HEATH v. CITY OF MONTROSE*, No. 254234, 2005 Mich. App. LEXIS 2400, at *1 (Ct. App. Sep. 29, 2005)

524. Sessions knew the written rule said "requested," knew the amendment had not been adopted, acknowledged the conflict, and intentionally enforced the contrary command.

525. Sessions intentionally denied recognition, declared Plaintiff out of order, and directed his removal.

526. Defendants Flynn, Morrisey, Stuchell, and Wolfram, together with non-party Council Member Socha, had actual notice of the dispute and voted against allowing Plaintiff to speak. This allegation does not name Socha as a Defendant or seek relief against him.

527. The named public officials knew Plaintiff had committed no violence or actual breach of the peace and nevertheless caused or supported his exclusion.

528. Those officials intentionally violated the Open Meetings Act and are liable for the remedies authorized by MCL 15.273.

529. Sessions independently and intentionally violated the Open Meetings Act a second time on July 20, 2026. By that date, Sessions had already been through the May 4 and June 1 controversy over the

identification requirement, had personally acknowledged the conflict between his interpretation and the written rule, and knew that four Council Members voted at the July 20 meeting to suspend the name-and-address requirement so that Plaintiff could speak. Despite that knowledge, Sessions personally enforced the amended rule, denied Plaintiff recognition, and prevented him from delivering public comment, even though Plaintiff remained peaceful throughout and the meeting continued without incident after the denial. Sessions knew, at the time he did so, that Plaintiff had committed no breach of the peace and that four Council Members opposed denying him comment. Sessions' July 20 denial of public comment was therefore a separate and independent intentional violation of MCL 15.263(5), entitling Plaintiff to the actual and exemplary damages, court costs, and actual attorney fees authorized by MCL 15.273 for that meeting, in addition to and independent of the remedies sought for the June 1 meeting.

530. Sessions likewise intentionally violated the Open Meetings Act at the May 4, June 15, September 8, and September 21, 2026 City Council meetings. At each, Sessions, with full knowledge of Plaintiff's objection and of the Act's requirements, denied Plaintiff recognition solely because he declined to state his name, and—at the June 15, September 8, and September 21 meetings—directed Plaintiff's removal although Plaintiff had committed no breach of the peace. By September 21, 2026, Sessions had presided over at least five prior denials of Plaintiff's public comment on the same ground. Each meeting is a separate intentional violation for which Plaintiff seeks the remedies authorized by MCL 15.273.

531. Thompson is not included in this Count unless discovery establishes that he was a public official subject to personal liability under MCL 15.273.

532. Defendants Wiley, Collins, Benzing, and Leininger are included in this intentional-violation Count only to the extent the evidence establishes that a particular Commissioner knew the governing rule and material facts and intentionally participated in, directed, approved, or ratified the denial or exclusion. No intentional violation is alleged from Board membership alone.

533. To the extent the evidence establishes that a particular County Commissioner knew the governing rule and material facts and intentionally participated in, directed, approved, or moved for the September 8, 2026 denial, removal, or proposed trespass order, that Commissioner is likewise liable for the remedies authorized by MCL 15.273.

534. MCL 15.273 expressly limits a plaintiff to “only 1 action” against a given public official “for a single meeting,” confirming that the $500.00 statutory maximum for actual and exemplary damages applies separately to each meeting at which that official is proven to have intentionally violated the Act, and not once for the entire case. Plaintiff has alleged, and will prove, independent intentional violations by named public officials at multiple, separate meetings — including the May 4, June 1, June 15, July 20, September 8, and September 21, 2026 City Council meetings, each attributable to Sessions, and, to the extent discovery confirms the personal, intentional participation of a named County Commissioner as alleged above, the May 12, June 23, July 14, August 25, and September 8, 2026 County Board meetings as well. Because the statutory limit applies to each public official for each meeting, Plaintiff seeks those remedies separately against each official proven to have intentionally violated the Act at each such meeting. Plaintiff accordingly seeks the statutory maximum actual and exemplary damages authorized by MCL 15.273 for each such meeting at which an intentional violation is proven, together with the court costs and actual attorney fees MCL 15.273 separately authorizes for the action. That an official’s intentional violation of the Act would also expose the official to prosecution for a misdemeanor under MCL 15.272 — though Plaintiff neither seeks nor could recover any part of that criminal penalty for himself — further confirms the seriousness the Legislature attached to the intentional conduct alleged here, and underscores that Plaintiff’s claim for the civil remedies MCL 15.273 does authorize is not overstated.

## COUNT XII

## FOURTEENTH AMENDMENT — PROCEDURAL DUE PROCESS: THREATENED CATEGORICAL EXCLUSION WITHOUT NOTICE OR A HEARING

***42 U.S.C. § 1983***

535. Plaintiff incorporates paragraphs 1 through 534 as though fully restated.

536. The Fourteenth Amendment's Due Process Clause prohibits a state or local government from depriving a person of a protected liberty interest without notice and an opportunity to be heard appropriate to the nature of the case.

537. Plaintiff possesses a protected liberty interest, secured independently by the First Amendment and by the Michigan Open Meetings Act's guarantee of a right to attend and address open, public meetings, in his continued access to and participation in Board and Council meetings, which by law must remain open to every member of the public.

538. On September 8, 2026, a sitting Commissioner moved, on the record, that the Board direct counsel to prepare an order of trespass barring Plaintiff from all future proceedings of the Board — not merely from the meeting then in progress — based on Plaintiff's past, peaceful refusals to self-identify.

539. That proposal did not arise from, and was not conditioned upon, any actual breach of the peace committed by Plaintiff at that or any meeting; it was instead proposed as an escalating consequence of the number of times Plaintiff had previously been removed for the same non-disclosure.

540. Neither the Board nor any Defendant has afforded, or offered to afford, Plaintiff advance written notice of the proposed trespass order, a statement of the specific conduct alleged to warrant permanent exclusion, an opportunity to respond or be heard before the Board, or any other process before moving to strip him of his right to attend and address future public meetings.

541. A categorical, permanent exclusion from all future meetings of a public body is a substantially greater deprivation than removal from a single meeting already in progress, and correspondingly demands, at minimum, advance notice and a meaningful opportunity to be heard before, or promptly after, its imposition.

542. Defendants have not disavowed, withdrawn, or abandoned the September 8, 2026 proposal. Plaintiff is informed and believes that Defendants continue to consider directing counsel to prepare and issue the order, without having afforded, or committed to afford, Plaintiff any of the process described above.

543. The threat is not speculative or contingent on events yet to occur: it was moved on the record by a sitting Commissioner, its stated predicate already exists in the record of Plaintiff's past removals, and Plaintiff intends to continue attending and addressing future Board meetings, placing him in a credible and objectively reasonable position of expecting the threatened order to issue against him without notice or a hearing. See *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014).

544. Plaintiff seeks a declaration that any order of trespass, ban, or categorical exclusion issued against him without advance notice and a meaningful opportunity to be heard would violate the Fourteenth Amendment's Due Process Clause, and preliminary and permanent injunctive relief barring Defendants from issuing or enforcing any such order without first affording that process.

## COUNT XIII

## FOURTH AMENDMENT — ANTICIPATED UNREASONABLE SEIZURE: ENFORCEMENT OF A TRESPASS ORDER ABSENT AN ACTUAL BREACH OF THE PEACE

***42 U.S.C. § 1983 — Declaratory and Injunctive Relief***

545. Plaintiff incorporates paragraphs 1 through 544 as though fully restated.

546. The Fourth Amendment, applied to state and local officials through the Fourteenth Amendment, protects individuals against unreasonable seizures of the person, including a forcible removal, exclusion, or arrest carried out without an objectively reasonable, individualized basis.

547. The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643 (1961), grants citizens the right to be free from unreasonable searches and seizures. U.S. CONST. amend. IV.

548. Although certain seizures are reasonable even if based on something less than probable cause, see, e.g., *Terry v. Ohio*, 392 U.S. 1, 20 (1968), the Supreme Court has never sustained against Fourth Amendment challenge the involuntary removal of a person to a police station and his detention there for investigative or other purported "law enforcement" purposes, whether for interrogation, fingerprinting, or otherwise, absent probable cause or judicial authorization. See *Hayes v. Florida*, 470 U.S. 811, 815 (1985), cited in *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005).

549. The Supreme Court of the United States has held that detention, regardless of its label – "intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest." *Myers v Potter*, 422 F3d 347, 353 (CA 6, 2005), citing *Dunaway v New York*, 442 US 200, ; 99 S Ct 2248; 60 L Ed 2d 824 (1979)

550. A "trespass order" of the kind proposed against Plaintiff at the September 8, 2026 county commissioners public meeting (**EXHIBIT 8**, Transcript of County Commissioners Public Meeting, September 8, 2026), and expressly stated to be anticipating prospective future (lawful and constitutional conduct) on the part of Plaintiff, and expressly stated to be a prophylactic measure that would not only dissuade Plaintiff's exercise of his First Amendment rights, but put in place a mechanism whereby law enforcement actions against him could be "escalated" on the basis that he is "trespassing" rather than simply exercising his right to attend a public meeting every time one is held.

551. This does not merely regulate his speech; it places present and potential future restrictions on his liberty. If issued and thereafter enforced, its enforcement would necessarily be carried out by a forcible seizure of Plaintiff's person — physical removal from, or a custodial arrest for entering, a public building in which a public body is meeting that, by law, must remain open to him.

552. Any future enforcement of such an order against Plaintiff, grounded solely in his past, peaceful refusals to self-identify rather than in any breach of the peace actually committed at the meeting from which enforcement is attempted, would be objectively unreasonable within the meaning of the Fourth Amendment, because it would seize Plaintiff's person without individualized suspicion of any offense and without the breach of the peace actually committed at the meeting that MCL 15.263(6) itself requires before any exclusion, let alone a categorical and permanent one.

553. A Commissioner has already stated, on the record, the intended basis for such enforcement: Plaintiff's repeated, peaceful refusal to state his name, not any violence, threat, property damage, or disturbance actually committed at any meeting from which future enforcement might be attempted.

554. Defendants have taken no steps to disavow that stated basis, to adopt any individualized, breach-of-the-peace standard for any future enforcement, or to represent that a future seizure of Plaintiff's person under a trespass order would rest on anything other than his continued, peaceful assertion of his right not to self-identify.

555. Plaintiff intends to continue attending and attempting to address future meetings of the Board, and each time he does so he faces a credible and objectively reasonable threat that Defendants will enforce, or attempt to enforce, the threatened trespass order against him by seizing his person, without any breach of the peace having occurred at that meeting. See *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014).

556. This Count seeks only declaratory and injunctive relief regarding the anticipated manner of enforcement; Plaintiff does not allege, in this Count, that any completed seizure under a trespass order has yet occurred.

557. Plaintiff seeks a declaration that any future seizure of his person to enforce a trespass, exclusion, or ban order against him, absent an actual breach of the peace committed by Plaintiff at the meeting from which he is excluded, would violate the Fourth Amendment, and preliminary and permanent

injunctive relief barring Defendants from enforcing any such order against Plaintiff except upon an actual breach of the peace he commits at that specific meeting.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that Defendants violated Plaintiff's rights under the First, Fourth, and Fourteenth Amendments and 42 U.S.C. § 1983;
2. Declare that the pre-amendment word "requested" did not authorize a mandatory name-and-address condition and that the failed override motion did not amend the Council Rules;
3. Declare that Plaintiff's peaceful refusal to comply with a not-yet-adopted identification requirement was not a breach of the peace;
4. Declare the amended identification rule unconstitutional on its face or, alternatively, as applied to Plaintiff and protected anonymous political speech;
5. Declare that Defendants violated MCL 15.263(5) and (6);
6. Preliminarily and permanently enjoin Defendants from compelling a speaker's name or residence information in violation of the First Amendment or the Michigan Open Meetings Act;
7. Preliminarily and permanently enjoin Defendants from enforcing any public-comment condition not established and recorded before the meeting at which it is applied
8. Preliminarily and permanently enjoin Defendants from excluding a person from an open meeting absent a breach of the peace actually committed at that meeting;
9. Preliminarily and permanently enjoin Defendants from issuing, enforcing, or threatening any order of trespass, ban, or categorical exclusion against Plaintiff based on his peaceful refusal to disclose his identity, absent an actual breach of the peace actually committed at that specific meeting;

10. Order correction, withdrawal, expungement, or an appropriate disputed notation concerning any trespass warning, police report, incident report, or adverse City record arising from Plaintiff's removals from the public meetings described herein, to the extent authorized by law;
11. Award nominal damages for completed constitutional violations;
12. Award compensatory damages according to proof under 42 U.S.C. § 1983 for loss of speech, exclusion, humiliation, emotional distress, and other legally cognizable injury;
13. Award punitive damages against eligible individual Defendants whose conduct was malicious or showed reckless or callous indifference to federally protected rights, but not against the City, the Council, the County, or the Board;
14. Award compensatory damages and legally recoverable exemplary damages against individual Defendants proven liable on the Michigan tort claims;
15. Award the actual and exemplary damages authorized by MCL 15.273 — up to $500.00 total for each single meeting at which a Defendant is proven to have intentionally violated the Open Meetings Act, including without limitation the May 4, June 1, June 15, July 20, September 8, and September 21, 2026 City Council meetings and, as proof warrants, the May 12, June 23, July 14, August 25, and September 8, 2026 County Board meetings — against each official proven to have intentionally violated the Act;
16. Award reasonable attorney fees and litigation expenses under 42 U.S.C. § 1988(b); and award court costs and actual attorney fees under MCL 15.271 for the action to compel compliance with and enjoin further noncompliance with the Open Meetings Act, and, separately, under MCL 15.273 against each official proven to have intentionally violated the Act;

17. Enter an appropriate preservation order requiring Defendants and their officers, employees, agents, custodians, and vendors to preserve all responsive video, audio, body-camera footage, dispatch records, communications, native files, metadata, audit trails, export history, retention records, and deletion logs;
18. If spoliation is established, award the curative measures or sanctions authorized by Federal Rule of Civil Procedure 37(e), the Court's inherent authority, and other applicable law;
19. Award taxable costs, lawful pre- and post-judgment interest, and such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: September 29, 2026

Respectfully submitted by:

Carson J. Tucker (P62209)
LEX FORI, PLLC
Attorneys for Plaintiff
DPT #3020
1250 W. 14 MILE RD.
TROY, MI 48083-1030
(734) 887-9261
cjtucker@lexfori.org

**VERIFICATION**

I, Lance Lashaway, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and that the factual statements are true and correct to the best of my knowledge, information, and belief.

Executed on:

September 28, 2026 by:

Lance Lashaway

Lance Lashaway